BARNUM, Appellant, v. EWING, et al, Board of County Commissioners, Respondents.

(220 N. W. 135.)

(File No. 6691.   Opinion filed June 23, 1928.)

*P. A. Hosford,* of Winner, for Appellant.

*C. E. Talbott* and *Windsor Doherty,* both of Winner, for Respondents.

CAMPBELL, J. This matter is before us upon an order to show cause, issued pursuant to affidavit and application of appellant for leave to amend his printed brief filed herein by inserting the following words:

"The court erred, in making and entering the order and decision dismissing the appellant's appeal to the circuit court, which order appears at pages 20, 21 of this brief."

It appears from the showing of appellant's counsel that the brief as filed contains no assignment of error by reason of his inadvertence and oversight, and that the one assignment of error which he desires leave to insert raises all questions involved in this appeal and presents the questions which were argued in the court below and which are argued in the briefs of both parties filed herein. No counter showing or appearance in opposition to appellant's application is made by the respondents, and we are satisfied, under the circumstances, that justice requires that the application for leave to amend be granted, and it will be so ordered.

This case is on our calendar for submission without oral argument, and all briefs are filed. While the case has not yet been reached in its regular order for submission on the merits, it has nevertheless been necessary for us to go into the matter at some length at this time in order to determine the propriety of granting leave to amend, and we think that the time of the court will be conserved if we now proceed to treat the amendent as made and determine the cause upon the merits instead of waiting until it is reached in its regular order and then finding it necessary to duplicate at least a part of the time we have now spent in refreshing our recollection as to the fact situation and the issues involved.

The appeal really presents but one question, which is stated by appellant in his brief in the following language:

"Can a taxpayer and citizen of a county appeal from a decision of the board of county commissioners redistricting the county into commissioner districts under the provisions of section 5886 of the Code of 1919?"

The facts are that the board of county commissioners of Tripp county, at its regular January, 1928, meeting, pursuant to section 5864, Rev. Code 1919, providing for re-establishment of commis-

sioner districts in counties in January, 1920, and every four years thereafter, "whenever such change shall be necessary in order that each district shall be as regular and compact in form as is practicable," proceeded to change the boundaries of the three commissioner districts in said county. Within the time required by law, appellant, together with twelve other tax payers of Tripp county, made written demand upon the state's attorney of said county to appeal from such action of the board of county commissioners, but the state's attorney refused so to do. After such refusal, and within the statutory time for appeal, appellant himself sought to appeal from such action of the county commissioners to the circuit court. Thereupon the defendant commissioners moved in the circuit court to dismiss such appeal "on the ground that appellant was not a party aggrieved and had no right of appeal and that the court had no jurisdiction of the appeal." This motion was granted by the learned trial judge, and, from the order dismissing his said appeal to the circuit court, appellant has perfected his appeal to this court.

Section 5886, Rev. Code 1919, with reference to appeals from decisions of boards of county commissioners, reads as follows:

"From all decisions of the board of county commissioners upon matters properly before it, there shall be allowed an appeal to the circuit court by any person aggrieved, upon filing a bond with one or more sureties to be approved by the county auditor, conditioned that the appellant will prosecute the appeal without delay and pay all costs that he may be adjudged to pay in the circuit court; such bond shall be executed to the county and may be sued in the name of the county upon breach of any condition therein; provided, that any state's attorney, upon written demand of at least seven taxpayers of the county, shall take an appeal from any action of the board of county commissioners, when such action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given, and upon serving the notice provided for in the following section the county auditor shall proceed the same as if a bond had been filed, and his fees for making the transcript shall be paid as other claims by the county."

It has been established by this court that the word "decisions"

in the first line of this statute must be limited to determinations quasi judicial in nature. Codington County v. Board of Commissioners, 51 S. D. 131, 212 N. W. 626. It is also true that, where a board of county commissioners undertook to change district boundaries at a time when they were not authorized by statute so to do, this court permitted their action to be reviewed by certiorari at the instance of a relator, who alleged no special interest in the matter beyond being "a resident taxpayer and elector" of the county in question. Van Den Bos v. Board of Commissioners (1898), 11 S. D. 190, 76 N. W. 935. In the instant case, however, all parties concede that the matter of redistricting was properly before the board and that the board was acting within its jurisdiction, although appellant claims it acted erroneously because it failed to comply with that part of section 5864, Rev. Code 1919, which requires that the board "shall so divide and redistrict its county that each district may contain as near as may be within one hundred of the same number of votes, as shown by the official returns of the votes cast at the last election," etc. All parties further concede that the determination of the board with reference to this matter was quasi judicial in its nature, and this court has so held. Codington County v. County Commissioners (1924), 47 S. D. 520, 199 N. W. 594. The case last cited is not only authority for the proposition that action by the board with reference to redistricting within the scope of its jurisdiction is quasi judicial in nature and is appealable, but it is also authority for the proposition that such action "relates to the interests or affairs of the county at large," and is appealable by the state's attorney in the name of the county upon written demand of at least seven taxpayers, as provided in the second part of section 5886.

The instant appeal, however, is sought to be taken by plaintiff alone under the first part of section 5886, providing for appeals "by any person aggrieved." Appellant does not claim to stand in any other or different position from any other resident taxpayer or elector of the county or at least from any other such person in his commissioner's district, and he states his qualifications as a party appellant and his grievance in the following language in his appeal to the court below:

"That this complainant and appellant now is, and for more than fifteen years last past has been, a taxpayer, elector, and free-

holder of Tripp county, S. D., continuously. That this appellant feels aggrieved by reason of the said redistricting of the said county and the said decision of said board of county commissioners, and claims and alleges that, by reason of the said method of redistricting, the people in the first commissioner's district are not fairly represented on the board of county commissioners and especially the people and taxpayers of the city of Winner, wherein this appellant has resided at all of the times hereinabove set forth. That as hereinabove stated, the first commissioner's district as now established and as shown by the list of votes cast at the last general election there were 1,516 votes cast. That in the said second commissioner's district as now established there were 1,137 votes cast. That in the third commissioner's district as now established there were 1,071 votes cast."

It is fundamental that the right of appeal from action of the county commissioners is entirely statutory, and exists only by virtue of some legislative enactment creating it. Board of Commissioners v. C., M. & St. P. R. R. Co. (1910), 26 S. D. 57, 127 N. W. 728. This case must turn, therefore, in the last analysis, upon the precise meaning of the phrase in our statute "any person aggrieved."

It is apparent that section 5886 provides for two types of appeal—the first being an individual appeal by "any person aggrieved"; and the second being an appeal by the state's attorney in the name of the county, on written demand of seven taxpayers, when the action relates to the interests or affairs of the county at large or any portion thereof, and when he deems it to the interest of the county to take such appeal. The origin of this appeal statute goes back to early territorial days, when provision was first made for county officers, and is found in section 30, c. 27, Laws Dakota 1874-75, reading as follows:

"That from all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any person aggrieved, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the appellant will prosecute his or her appeal without delay, and pay all costs that he or she may be adjudged to pay in the said district court; said bonds shall be executed to the county, and may be sued in the name of the county, upon breach of any condition therein."

It will be noted that this section provided only for the first of the two types or classes of appeals that appear in the present statute. The second of these classes of appeals did not come into our law until 1883, when chapter 5, Laws Dakota 1883, amended the previously existing law by adding thereto the following words:

"Provided, that any district attorney upon the written demand of at least seven taxpayers of the county, shall take an appeal from any action of the board of county commissioners of any county within his district, when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the proper county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given, and upon serving the notice provided for in section forty-seven (47) the county clerk shall proceed the same as if a bond had been filed, and his fees for making the transcript shall be paid as other claims by the county."

The purpose, nature, object and effect of this amendment has been considered to some extent by this court in the case of Lyman County v. Board of Commissioners (1901), 14 S. D. 341, 85 N. W. 597.

It is clear that many matters will come before a board of county commissioners as a quasi judicial tribunal in which they must determine conflicting interests between individuals as such, and also conflicting interests between individuals as such, upon the one hand, and the county (that is, the public as composed of the aggregate of the citizens, electors, and taxpayers of the county), upon the other. Whenever a board of county commissioners allows a claim against the county every taxpayer of that county has an interest in said matter, but it is an interest solely qua taxpayer, not an individual or personal interest. The pecuniary interest of the heavy taxpayer will be mathematically greater than the interest of the small taxpayer, but it will be identical in nature. It is an interest common to all, and exists solely because of the fact that they are taxpayers, and, while it may differ in amount, it does not differ in nature or origin among any of the taxpayers. None of the taxpayers under such circumstances are injured by the allowance of such claim, under ordinary circumstances, in any personal or individual capacity, nor are they as individuals denied any personal or property right, nor is there imposed upon them any bur-

den or obligation as individuals nor any burden or obligation other than is imposed upon all taxpayers of the county in proportionate degree, not as individuals, but as taxpayers. The claimant against the county, on the other hand, appears in the matter in an individual capacity. If his claim is wrongfully denied, he suffers a personal and pecuniary loss not shared by taxpayers in general, falling upon him in his individual capacity, and not merely in his capacity as a taxpayer and members of the body public of the county, if in fact he is such. Other circumstances may be conceived where an individulal not directly a party to the proceeding might nevertheless be thereby aggrieved in an individual capacity as distinguished from his general capacity as a taxpayer or one of the members of the public. An illustration is the early Oregon case of Carothers v. Wheeler (1855), 1 Or. 194. Carothers applied to the board of county commissioners for a license to operate a ferry at a certain point, which license was granted. An appeal was permitted to be taken by Wheeler, who owned the land where the board was permitting Carothers to establish his ferry. There manifestly Wheeler, in his private capacity as owner of the land in question, had an interest which was directly and adversely affected by the order of the board as distinguished from any general or public interest in the matter common to all electors or taxpayers of the county, and the court said:

"Whether 'any person,' in the broad language of the statute, whose personal or private interests are not affected by the decision of the county board, can appeal therefrom, may admit of doubt; but we think it is clear that any person, whose existing rights are cut off or destroyed by such a decision, may have his appeal to the district court."

The term "any person aggrieved" in our statute is probably broad enough to include, under proper circumstances, persons who are not actually parties to the proceeding before the county board, but we think it can only include such persons when they are able affirmatively to show that they are "aggrieved" in the sense that by the decision of the board they suffer the denial of some claim of right either of person or property, or the imposition of some burden or obligation in their personal or individual capacity as distinguished from any grievance which they might suffer by the decision solely in their capacities as members of the body public

of the county, or taxpayers or electors thereof, common in nature to a similar grievance suffered by all or many other electors or taxpayers.

The method whereby an appeal may be taken to protect the interest of individuals who suffer a grievance in their capacities as taxpayers, electors, or members of the body public of the county originated with and is provided by the second portion of section 5886, Rev. Code 1919, and we think such method is exclusive. The statute does not contemplate that every citizen, elector or taxpayer of a county who deems himself aggrieved in his capacity as citizen, taxpayer, or elector may appeal. He must secure at least six other taxpayers to join with him in a written demand upon the state's attorney, and must make sufficient showing to persuade that officer that it is to the interest of the county to take the appeal. On this point undoubtedly the state's attorney is vested with some discretion by our statute. This, of course, means a legal discretion, and he cannot act arbitrarily in the matter. If the state's attorney abuses such discretion, doubtless the demanding taxpayers have their remedy, but the fact that the state's attorney may have abused his discretion in refusing their demand to appeal in the name of the county does not give them or any of them a right to appeal individually when their only grievance is as taxpayers or members of the public. This is the rule established by the Supreme Court of Oklahoma in the case of Clark v. Warner (1922), 85 Okl. 153, 204 P. 929, relied on in the court below, and we think it is sound. We realize that in the Van Den Bos Case, 11 S. D. 190, 76 N. W. 935, supra, an individual was permitted to act as relator in behalf of the public interest in certiorari, but the cases are not parallel. Theer is no specific provision in certiorari for application in behalf of the public interest as such. The statute (section 2997, R. C. 1919) merely says that the application must be on affidavit "by the party beneficially interested"; but in our appeal statute, as we have seen, there is affirmative and adequate provision for appeals in the public interest in the second part of the section originating in the amendment of 1883.

In this case the appellant does not allege any personal, peculiar or individual interest in the decision in question, as distinguished from an interest common to all other taxpayers and elec-

tors of the county or at least all others in his commissioner's district, and yet he has sought to appeal under the first portion of the appeal statute. This we think he cannot do, and the learned trial judge rightly granted the motion to dismiss.

The order appealed from is affirmed.

BURCH, P. J., and BROWN, J., concur.

SHERWOOD, J., concurs in result.

POLLEY, J., dissents.