In the Matter of the Application of **NORTHERN STATES POWER COMPANY for a Proposed Increase in Rates for Electric Service.**

**No. 13703.**

Supreme Court of South Dakota.

Argued Sept. 7, 1982.

Decided Jan. 5, 1983.

Walter Washington, Asst. Atty. Gen., Pierre, for appellant South Dakota Public Utilities Com'n; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee Northern States Power Co.; Charles D. Gullickson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

HENDERSON, Justice.

### ACTION

Northern States Power Company (NSP) applied to the South Dakota Public Utilities Commission (PUC) for an increase in electric rates to cover NSP's projected losses related to the Tyrone nuclear power project. The PUC decided to defer ruling on NSP's application until the Federal Energy Regulatory Commission (FERC) decided what NSP's losses were.

NSP appealed to the circuit court, wherein the PUC's decision was reversed as being beyond the PUC's statutory authority. This appeal ensued.

On the federal level, FERC has approved the losses claimed by NSP; however, the PUC has appealed FERC's order to the Eighth Circuit Court of Appeals. We reverse and remand.

## FACTS

NSP provides electric power in the states of Minnesota, Wisconsin, North Dakota and South Dakota. During the mid-1970s, NSP of Wisconsin, a subsidiary of NSP, undertook the Tyrone nuclear power plant project in Wisconsin. The Wisconsin Public Service Commission (WPSC) originally approved the project. However, in 1979 WPSC asserted that Wisconsin rate payers would not benefit from the Tyrone project. Subsequently, WPSC withdrew its approval of the project which resulted in estimated losses for NSP of Wisconsin of 71.8 million dollars.

NSP and NSP of Wisconsin filed an amendment to their coordinating agreement with FERC whereby NSP assumed 87% of the Tyrone losses from NSP of Wisconsin. For NSP's South Dakota customers, this agreement translated into proposed increased wholesale electric rates amortized over five years beginning at $512,000.00 per year. The PUC intervened in the FERC action opposing the proffered amendment. However, the amendment was ultimately approved by a FERC administrative court on December 4, 1980.

On June 23, 1980, NSP filed with the PUC an application seeking an increase in retail electric rates to include the Tyrone costs. Hearings were had before the PUC and on November 19, 1980, the PUC and NSP reached a settlement agreement which provided in part that if the Tyrone costs were deferred by the PUC and later determined allowable by a final order no longer subject to judicial review, that NSP would be provided a reasonable carrying charge to compensate it for the deferral.

On January 5, 1981, the PUC ruled to defer NSP's proposed South Dakota retail share of the Tyrone costs until the FERC wholesale rate issues could be determined by a final order no longer subject to judicial review. NSP appealed the PUC ruling to the circuit court wherein the decision of the PUC was reversed and remanded. The lower court ruled that the PUC exceeded its statutory authority because the deferral removed NSP's statutory right of receiving its current costs of providing electrical services. Therefore, the lower court concluded that the PUC failed to establish just and reasonable rates. The PUC has now appealed that decision to this Court.

As to the federal actions, FERC issued an order on December 3, 1981, substantially approving the decision of the FERC administrative court. However, the total Tyrone loss figure was revised downward to 67 million dollars. On February 3, 1982, the PUC appealed FERC's order to the Eighth Circuit Court of Appeals.

## ISSUES

### I.

IS NORTHERN STATES POWER COMPANY A PARTY AGGRIEVED BY THE PUBLIC UTILITIES COMMISSION DECISION AND ORDER? WE HOLD THAT IT IS.

### II.

DID THE PUBLIC UTILITIES COMMISSION EXCEED ITS STATUTORY AUTHORITY IN DEFERRING A DECISION ON THE RECOVERY OF THE TYRONE CANCELLATION COSTS BASED UPON THE PARTIES' SETTLEMENT AGREEMENT? WE HOLD THAT UNDER THE FACTS OF THIS CASE IT DID NOT.

## DECISION

### I.

Appellant PUC contends that NSP is not an "aggrieved party" within SDCL 1-26-30, and thus lacks standing in this Court. In relevant part, SDCL 1-26-30 provides: "A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."

Appellant PUC would have us add to SDCL 1-26-30 the gloss of federal cases on standing. We have reviewed appellant's numerous federal citations and authority

and we are unwilling to apply federal standing law to our analysis. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962), provides the gist of the holding as pertains to federal standing and contains the following illuminating passage:

Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing. *It is, of course, a question of federal law.* (Emphasis supplied.)

*See also,* Nowak, Rotunda, Young, Hornbook on Constitutional Law at 73 (1978).

The concept of an "aggrieved party" is not new to this Court; indeed, as a basis for appeal it has been traced back to South Dakota's early territorial days when the first boards of county commissioners were established. Laws of Dakota § 30–27 (1874–75). Many years later, the first in-depth analysis of "aggrieved party" regarding a test for standing was made by this Court in an appeal from a board of county commissioners' decision. *Barnum v. Ewing,* 53 S.D. 47, 220 N.W. 135 (1928). In *Barnum* we set forth the following test: "[W]e think ['any person aggrieved'] can only include such persons when they are able affirmatively to show that they are 'aggrieved' in the sense that by the decision of the board they suffer the denial of some claim of right either of person or property . . . ." *Id.* at 53, 220 N.W. at 138.

We have adhered to the *Barnum* test for an "aggrieved party" in several school board review cases. *Cuka v. School Bd. of Bon Homme Sch. Dist.,* 264 N.W.2d 924, 926 (S.D.1978); *Blumer v. Sch. Bd. of Beresford Ind. S.D.,* 250 N.W.2d 282, 284 (S.D.1977); *Camp Crook Independent School Dist. No. 1 v. Shevling,* 65 S.D. 14, 26, 270 N.W. 518, 524 (1936); *but cf. Valley State Bank of Canton v. Farmers State Bank,* 87 S.D. 614, 213 N.W.2d 459 (1973) (which was decided on South Dakota banking statutes, rather than an explicit test).

NSP claims that it does have standing in this Court because the PUC's deferral deprives NSP of the money it requested during the time taken to resolve the Tyrone issue. Based upon *Barnum* and its progeny, we agree.

## II.

■ We review the PUC's actions pursuant to SDCL 1–26–36. As we have recently held:

Succinctly stated, we (1) determine whether the PUC's order viewed in light of the relevant facts and of the PUC's broad regulatory duties abused or exceeded its authority; (2) examine the manner in which the PUC has employed the methods of regulation which it has itself selected and determine whether each of the order's essential elements are supported by substantial evidence; and (3) determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, by providing appropriate protection to the relevant public interest both existing and foreseeable. *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

*Application of Northwestern Public Service Co.,* 297 N.W.2d 462, 464 (S.D.1980).

■ We take cognizance of our recent expression in *South Dakota Public Utilities v. Otter Tail,* 291 N.W.2d 291, 293 (S.D. 1980):

[R]ate making is a legislative process, whether performed directly by the legislature, or by an agency of its creation. *Northwestern Public Service v. Cities of Chamberlain, etc.,* 265 N.W.2d 867 (S.D. 1978) (*NPS v. Chamberlain*). This extends to the procedure by which a legislative determination is made and, within the broad field where that discretion is operative, legislative determinations are conclusive. *NPS v. Chamberlain, supra; Application of Northwestern Bell Telephone Co.,* 78 S.D. 15, 98 N.W.2d 170 (1959); *In re Northwestern Bell Tele-*

*phone Company,* 73 S.D. 370, 43 N.W.2d 553 (1950); *Application of Dakota Transportation, Inc., of Sioux Falls,* 67 S.D. 221, 291 N.W. 589 (1940).

Additionally, we review the circuit court's judgment unaided by any presumption that the circuit court was correct. *Matter of Est. Certain Terr. Elec. Boundaries,* 318 N.W.2d 118 (S.D.1982); *Application of Union Carbide Corp.,* 308 N.W.2d 753 (S.D. 1981); *Matter of South Lincoln Rural Water System,* 295 N.W.2d 743 (S.D.1980).

Central to our analysis herein is the settlement agreement between the PUC and NSP which in relevant part provides:

3. If the Commission decides in favor of staff's motion or its contentions and a reviewing court reverses the Commission order, an additional $512,000 shall be allowed in NSP's retail rates, such allowance shall be subject to refund should the FERC ultimately order refunds or otherwise not approve the change of such rates by NSP (Wisconsin) to NSP (Minnesota) and shall be subject to further refund to the extent the Commission has jurisdiction and subsequently disallows (or further defers) such charges.

4. To the extent any portion of the $512,000 charge is deferred but is later determined allowable by a final order no longer subject to further judicial review, the allowed recovery shall include in addition a reasonable carrying charge to compensate NSP for the deferral, until such time as the deferred principal and accumulated charges are fully amortized.

■ The PUC interprets the settlement agreement as providing that the Tyrone costs can be deferred until they are no longer subject to judicial review. Therefore, the PUC contends that its deferral is proper since the amount of the wholesale rate increase has yet to be delineated by a final nonappealable order. In essence, the PUC's deferral is an assertion that the PUC cannot rule on this portion of the rate increase until the key analytical component, the Tyrone losses, is resolved in the federal forum. Based upon the parties' settlement agreement and the unique circumstances of this action, we agree that it is within the PUC's authority to defer ruling on this particular rate increase until a final federal decision determining the amount of the Tyrone losses is reached.

It must be noted that the parties' settlement agreement provides protection for NSP in the form of a reasonable carrying charge to compensate for the deferral. This situation is analogous to the allowance for funds used during construction wherein construction costs of electric plants are not included in the electric rate base during the construction period. Rather, the costs are deferred until the plant is placed in service or its service is imminent and a carrying charge is allowed for the electric company to compensate for the deferral. *See Otter Tail, supra.* As we held in *Application of Northwestern Public Service Co.,* 297 N.W.2d 462, 465 at n. 4 (S.D.1980), "This is a policy decision entirely within the purview of the PUC."

Although NSP contends and the trial court ruled that the PUC's deferral is violative of SDCL 49–34A–8, we disagree. SDCL 49–34A–8 expresses that the rates must provide the utility with sufficient revenues "to meet its total current cost of furnishing such service ... and to earn a fair and reasonable return upon the value of its property." We have not been provided with any guidance as to what an unreasonably low rate would be. We note that NSP asked for an annual increase including the Tyrone costs of $5,080,000.00 which was an 18.9% overall increase of rates. Based on this increase, the PUC estimated that NSP would be receiving additional annual profits in excess of $500,000.00. NSP and the PUC settled for a $2,397,000.00 rate increase, excluding the Tyrone costs. *In re Northwestern Bell Telephone Co.,* 73 S.D. 370, 43 N.W.2d 553 (1950), is inapposite for the evidence in this case is insufficient to establish that the approved rates and deferral of South Dakota's share of the Tyrone costs were confiscatory thus violative of due process.

We do not reach appellee's issues as briefed as a notice of review was not filed with this Court.

We reverse and remand to the circuit court with directions to uphold the PUC's deferral until the federal courts issue a final order no longer subject to further judicial review.

All the Justices concur.