#25074, #25083-aff in pt rev & vac in pt-DG

**2009 SD 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ED CABLE,                                        Petitioner and Appellant,

  v.

UNION COUNTY BOARD OF COUNTY
COMMISSIONERS, MARVIN SCHEMPP,
DOYLE KARPEN, DALE NEELY,
MILTON USTAD and ROSS JORDAN,          Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STEVEN R. JENSEN
Judge
* * * *

JAMES G. ABOUREZK
Abourezk Law Offices, PC
Sioux Falls, South Dakota                Attorneys for petitioner
                                         and appellant.


WILLIAM C. GARRY
SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota
and
JERRY A. MILLER
Union County State's Attorney
Elk Point, South Dakota                  Attorneys for respondents
                                         and appellees.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 29, 2009

OPINION FILED **07/15/09**

#25074, #25083

GILBERTSON, Chief Justice

[¶1.]        Ed Cable (Cable) and Save Union County, LLC, (Save Union County) filed an appeal under SDCL 7-8-27 in circuit court seeking an order reversing the issuance by the Union County Board of Commissioners (County) of a rezoning permit to Hyperion, LLC, (Hyperion) for the construction of an oil refinery in Union County, South Dakota.  The circuit court found Cable and Save Union County were without standing to file an appeal under SDCL 7-8-27, and that their lack of standing rendered it without subject matter jurisdiction to consider the appeal.  The circuit court, notwithstanding its legal conclusion that it lacked subject matter jurisdiction over the appeal, subsequently denied Cable's motion for summary judgment and Union County's motion to dismiss based on the result of a referendum vote that approved the rezoning.  We affirm in part and reverse and vacate in part.

**FACTS**

[¶2.]        On March 11, 2008, County rezoned property in rural Union County and granted a rezoning permit to Hyperion.  The rezoning made it possible for Hyperion to pursue construction of an oil refinery and housing complex on the property.  Construction on the project remained contingent on Hyperion securing all necessary federal and state permits and licenses.

-1-

[¶3.]       On March 20, 2008, Cable and Save Union County[1] filed an appeal in Union County circuit court pursuant to SDCL 7-8-27. SDCL 7-8-27 provides in relevant part:

> From all decisions of the board of county commissioners upon matters properly before it, there may be an appeal to the circuit court by *any person aggrieved* upon filing a bond in the amount of two hundred fifty dollars with one or more sureties to be approved by the county auditor conditioned that the appellant shall prosecute the appeal without delay and pay all costs that he may be adjudged to pay in the circuit court.

(Emphasis added). Cable and Save Union County requested relief in the form of an order from the circuit court overturning the county's approval of Hyperion's application for the rezoning permit.

[¶4.]       On April 11, 2008, County moved to dismiss Cable and Save Union County's petition for lack of subject matter jurisdiction. County alleged that Cable was not a "person aggrieved" within the meaning of SDCL 7-8-27, as he alleged no personal or individual grievance distinct from that of a general taxpayer and, therefore, lacked standing to bring the claim under SDCL 7-8-27. It also provided evidence that Cable did not own any real property in Union County, as the property on which he resided was titled in the name of Barbara Anderson. County further alleged that Cable's petition should have been filed under the provisions of SDCL 7-

---

1.    Save Union County, LLC, was formed in January 2008. It does not own any real property in Union County. Its members include, in addition to Cable, Jason Quam, Dale Harkness, Arden Hanson, and Burdette Hanson. Save Union County did not allege any harm or injury to it apart from that claimed by its members.

8-28 as a general taxpayer appeal.[2] County also sought to have Save Union County dismissed for lack of subject matter jurisdiction due to lack of standing. Save Union County lacked an ownership interest in any real property within Union County, which County argued rendered it a non-taxpaying entity and, therefore, not a "person aggrieved" within the meaning of SDCL 7-8-27.

[¶5.]        On April 16, 2008, Cable and Save Union County resisted County's motion to dismiss for lack of subject matter jurisdiction. In support of the resistance, Cable alleged he had pleaded enough facts to show he had standing and establish the circuit court's subject matter jurisdiction. Cable alleged his personal injuries included an injury to his right to live without pollution affecting his living quarters and usual quiet and peaceful rural lifestyle in Union County. Although not disputing that the property on which he resided was titled in the name of Barbara Anderson, Cable claimed an equitable interest in the home in which he resided that was based on his labor in building the home. He further alleged he would be able to show a loss in value on his home. In addition, Cable alleged he would be injured by the increased traffic along county roads that would further

_____

2.      SDCL 7-8-28 provides:

> Upon written demand of at least fifteen taxpayers of the county, the state's attorney shall take an appeal from any action of such board if such action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, if he deems it to the interest of the county so to do; and in such case no bond need be required or given and upon serving the notice provided for in § 7-8-29, the county auditor shall proceed the same as if a bond had been filed and his fees for making the transcript shall be paid as other claims by the county.

damage his health and property value. On April 29, 2008, a hearing was held on the motion to dismiss for lack of subject matter jurisdiction.

[¶6.]        On May 2, 2008, Cable and Save Union County filed a motion for an order granting leave to amend the original petition to add Jason Quam (Quam), Dale Harkness (Harkness), Arden Hanson, and Burdette Hanson, each a member of Save Union County, as individual named petitioners. Cable also filed an affidavit in support of his contention that he was a "person aggrieved" within the meaning of SDCL 7-8-27. Cable's property was identified in the affidavit as being approximately one quarter mile from the boundary of the proposed refinery. The affidavit also identified Cable's injuries as a consequence of the issuance of the zoning permit as: 1) a diminution of the quality of his tranquil, rural lifestyle and the threat of air, water, and ground pollution; 2) the nearness of his home to the proposed refinery, its accompanying heavy traffic and the thousands of construction laborers working and driving near his home; 3) an inability to move farm equipment from field to field during certain unspecified times due to heavy construction traffic; 4) thousands of construction laborers living in dormitories might cause trouble in the form of theft, drunkenness, and rowdy behavior; 5) danger from potential explosions and fires; 6) nearness of the refinery would make it impossible for Cable and his wife to live on their property, and that it would be difficult to sell the property; 7) drainage of water from Cable's property to the Hyperion site would no longer be allowed; and 8) Cable's asthma would be exacerbated by the pollution emitted by the refinery.

[¶7.]    Quam, Harkness, Arden Hanson, and Burdette Hanson submitted affidavits in which they detailed similar complaints based on the proximity of their property to the proposed refinery. Burdette Hanson's affidavit stated he lived twenty rods from the boundary of the proposed refinery; Arden Hanson's affidavit stated he lived one-quarter of a mile from the boundary; Harkness's affidavit stated he lived 250 feet from the boundary; and Quam's placed him at less than one mile from the boundary.

[¶8.]    Testimony was offered from Robert Kessler by affidavit. Kessler indicated he lived twenty-four miles from the boundary. He further testified that he probably would be less impacted than those who lived closer to the proposed refinery.

[¶9.]    County resisted the motion to amend the petition to name four members of Save Union County as individual plaintiffs. Another hearing on the matter was held on May 27, 2008, at which the parties argued the motion to amend. The parties also were permitted to offer additional evidence on the issue of standing and the County's motion to dismiss for lack of subject matter jurisdiction.

[¶10.]    A referendum election was scheduled shortly after Cable and Save Union County filed their petition. On June 3, 2008, the referendum passed with fifty-eight percent of the votes cast. Prior to the election, Cable and Save Union County did not seek a stay of the referendum vote or subsequently challenge the election procedure.

[¶11.]    On July 23, 2008, the circuit court issued a memorandum opinion in which it granted County's motion to dismiss for lack of subject matter jurisdiction

as to Save Union County due to lack of standing. The circuit court also denied the motion to amend to add its members as individuals, finding that any amendment would not relate back to the original petition. With regard to the issue of Cable as a "person aggrieved" within the meaning of SDCL 7-8-27, the circuit court determined that it was not able to conclude as a matter of law that Cable lacked standing. It then denied County's motion based on the record as it had been developed to that point. The circuit court determined that a reading of South Dakota law and cases from other jurisdictions on the issue of standing required "that Cable show pecuniary loss and/or that the harm he alleges be significantly greater to him than to the public in general."

[¶12.] On September 9, 2008, County filed a motion to dismiss for failure to state a claim under SDCL 15-6-12(b)(5). County contended that the limited procedural challenges to referendum election results available under South Dakota law did not include the type of petition before the circuit court. It further contended that the separation of powers doctrine precluded a judicial challenge to the substantive results of a referendum election. In its motion to dismiss for failure to state a claim, County asked the circuit court to consider all pleadings on the record and briefs filed with the circuit court.

[¶13.] On October 2, 2008, Cable filed a motion for summary judgment on his petition. As grounds for the motion, Cable asserted that South Dakota law prohibited the Union County Board of Commissioners from forming a special zoning area within Union County. Cable further alleged that Union County had a county-

wide comprehensive plan and zoning ordinance[3] and that any attempt to establish a special zoning area within the county was in violation of SDCL 11-2-37.[4]

[¶14.] On October 21, 2008, a hearing was held on Cable's motion for summary judgment and County's motion to dismiss for failure to state a claim upon which relief could be granted. The circuit court also permitted additional testimony and argument on the motion to dismiss for lack of subject matter jurisdiction. In addition to the pleadings on the County's original motion to dismiss, the circuit court heard testimony from Cable and other witnesses and considered affidavits

---

3.   The County Board of Commissioners of Union County, South Dakota, had enacted a comprehensive land use plan dated August 17, 2005. The plan noted it would be updated every five years and was intended to be a continuous planning process. Its stated purpose included "[t]o provide for the orderly arrangement of the County enabling each part (agricultural, residential, recreational, commercial and industrial) to perform its function economically and with minimum conflict to the other parts." The plan also noted that it was "not intended to be a site development guide for specific parcels of land; rather it [was] intended to provide a general outline of Union County's growth management."

4.   SDCL 11-2-37 provides:

> If an area within a county and not within a municipality becomes so situated that a zoning ordinance or any other purpose or procedure set forth in this chapter is advisable, persons within the area may apply to the board to establish the area as a special zoning area or the board may on its own initiative establish the area as a special zoning area, pursuant to this chapter. No special zoning area may be formed in a county in which a county wide comprehensive plan and zoning ordinances have been adopted. The formation of a special zoning area is only valid in a county that has not adopted a county wide comprehensive plan and zoning ordinances. The board may establish a special zoning area on its own initiative if the special zoning area comprises an area of at least five square miles.

submitted.  The circuit court dismissed Cable's petition for lack of subject matter jurisdiction and issued findings of fact and conclusions of law in the matter on November 25, 2008.  The circuit court concluded that Cable's personal injuries were not unique to him and not different from those that might be suffered by the general public as a result of the construction of the oil refinery.  The circuit court further concluded that Cable's claim that he would be affected more than the general public by the oil refinery because he lived closer to the proposed site was speculative at best.  It also concluded that Cable failed to provide any expert testimony as to the effects on his asthma as compared to the effect on members of the general public who might also have asthma.  The circuit court also concluded that Cable failed to present any expert testimony regarding the risk of possible contamination of the aquifer under his property, or the air pollution Cable claimed would result from the building of the refinery as being more significant or harmful to him than to the general public.  The circuit court further concluded that Cable's claims as to noise, smell, light, and traffic from the proposed refinery were speculative, and that Cable failed to provide any specific evidence that the traffic on the road where he lived would be heavier than in other parts of the county.  Finally, the circuit court concluded that Cable failed to meet his burden to show that he would suffer an individual or personal injury distinguishable from an injury suffered by the public in general.

[¶15.]      After concluding as a matter of law that Cable lacked standing as a "person aggrieved" within the meaning of SDCL 7-8-27, the circuit court also concluded that it did not have jurisdiction to review the merits of the appeal under

SDCL 7-8-27. Notwithstanding the circuit court's finding that it had no subject matter jurisdiction over Cable's appeal, it then ruled on County's motion to dismiss based on the referendum vote and Cable's motion for summary judgment. Both motions were denied by the circuit court. It then dismissed the appeal.

[¶16.]     Cable timely filed an appeal to this Court raising the following issues:

  1.  Whether the circuit court erred when it dismissed Cable's petition due to lack of standing as a "person aggrieved" within the meaning in SDCL 7-8-27.

  2.  Whether the circuit court erred when it dismissed Save Union County for lack of standing as a "person aggrieved" within the meaning in SDCL 7-8-27.

  3.  Whether the circuit court erred when it denied Cable's motion for summary judgment.

By notice of review, County raises the following issue on appeal:

  4.  In the alternative if the circuit court erred in dismissing the petition for lack of standing, whether the circuit court's order dismissing the appeal should be reaffirmed due to the referendum vote that approved the zoning ordinance at issue.

### ANALYSIS AND DECISION

[¶17.]     **1.     Whether the circuit court erred when it dismissed Cable's petition due to lack of standing as a "person aggrieved" within the meaning in SDCL 7-8-27.**

[¶18.]     Cable's argument on appeal is that he had standing to bring the appeal as a "person aggrieved" because he will suffer a personal injury unique and distinct from that of other taxpayers living farther away from the proposed refinery site. County contends on appeal that the circuit court was correct when it concluded as a matter of law that it lacked subject matter jurisdiction to hear the suit because Cable lacked standing. County argues Cable's injuries were not different and

unique as compared to other taxpayers, and thus, he lacked standing under SDCL 7-8-27 as a "person aggrieved."

*Standard of Review*

[¶19.]       As this Court recently noted, a motion to dismiss can be converted to a motion for summary judgment when the parties submit and the circuit court accepts matters outside the pleadings, and the parties do not object to the circuit court's consideration of those matters. Flandreau Public School Dist. No. 50-3 v. G.A. Johnson Constr., Inc., 2005 SD 87, ¶6, 701 NW2d 430, 433-34. When a motion to dismiss that has been converted into a motion for summary judgment is appealed, we review the matter as a motion for summary judgment. *Id.* Our well-settled standard of review for a motion for summary judgment requires this Court to determine "whether the record before us discloses any genuine issue of material fact and, if not, whether the court committed any error of law." *Id.* ¶7, 701 NW2d at 434. On review, jurisdictional issues are issues of law to be reviewed under the de novo standard of review. State *ex rel.* LeCompte v. Keckler, 2001 SD 68, ¶6, 628 NW2d 749, 752. Under the de novo standard of review, this Court gives no deference to the circuit court's conclusions of law. Sherburn v. Patterson Farms, Inc., 1999 SD 47, ¶4, 593 NW2d 414, 416. "To determine whether the statutory grant of appellate jurisdiction has been met, the rules of statutory interpretation apply." Johnson v. Lebert Const., Inc., 2007 SD 74, ¶4, 736 NW2d 878, 879 (quoting Double Diamond v. Farmers Co-op Elevator, 2003 SD 9, ¶6, 656 NW2d 744, 746). Statutory construction is also an issue of law to be reviewed under the de novo standard of review. Discover Bank v. Stanley, 2008 SD 111, ¶15, 757 NW2d 756,

761. This Court also reviews affidavit evidence de novo. *In re* G.R.F., 1997 SD 112, ¶23, 569 NW2d 29, 34-35.

*Standing*

[¶20.] "Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void." City of Sioux Falls v. Missouri Basin Mun. Power Agency, 2004 SD 14, ¶10, 675 NW2d 739, 742 (quoting Barnes v. Matzner, 2003 SD 42, ¶10, 661 NW2d 372, 375). "Subject matter jurisdiction is conferred solely by constitutional or statutory provisions." Application of Koch Exploration Co., 387 NW2d 530, 536 (SD 1986) (citing Powell v. Khodari-Intergreen Company*,* 303 NW2d 171 (Iowa 1981)). "Furthermore, subject matter jurisdiction can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Id*. (citing *In Re* Marriage of Helm*,* 271 NW2d 725 (Iowa 1978)).

[¶21.] A plaintiff must satisfy three elements in order to establish standing as an aggrieved person such that a court has subject matter jurisdiction. Benson v. State, 2006 SD 8, ¶22, 710 NW2d 131, 141 (citing Lujan v. Defenders of Wildlife*,* 504 US 555, 560-61, 112 SCt 2130, 2136, 119 LEd2d 351 (1992) (*Lujan II*)). First, the plaintiff must establish that he suffered an injury in fact – "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan II*, 504 US at 560, 112 SCt at 2136, 199 LEd2d 351 (internal citations omitted). Second, the plaintiff must show that there exists a causal connection between the plaintiff's injury and the conduct of which the plaintiff complains. *Benson*, 2006 SD 8, ¶22, 710 NW2d at 141. The

causal connection is satisfied when the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan II*, 504 US at 560, 112 SCt at 2136, 119 LEd2d 35 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 US 26, 41-42, 96 SCt 1917, 1926, 48 LEd2d 450 (1976)). Finally, the plaintiff must show it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Benson*, 2006 SD 8, ¶22, 710 NW2d at 141.

[¶22.] At the initial stages of litigation, it is enough for the plaintiff to allege an injury. *Id*. ¶27 (Zinter, J., concurring). However, the plaintiff bears the burden of proving standing in successive stages of the litigation with the manner and degree of evidence required at those later stages. *Id*. ¶29.

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." [ *Lujan v.*] *National Wildlife Federation, supra*, 497 US [871] at 889, 110 SCt [3177] at 3189[, 111 LEd2d 695 (1990) (*Lujan I*)]. *In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts,"* FedRule CivProc 56(e), *which for purposes of the summary judgment motion will be taken to be true.* And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Gladstone* [Realtors v. Village of Bellwood], 441 US [91,] 115 n31, 99 SCt [1601,] 1616 n31[, 60 LEd2d 66 (1979)].

*Id*. (quoting *Lujan II,* 504 US at 561, 112 SCt at 2137, 119 LEd2d 351) (emphasis added).

[¶23.] At the motion for summary judgment stage of litigation, a party resisting the motion based on a lack of standing has a greater burden than at the

motion to dismiss stage of litigation. *Lujan II*, 504 US at 561, 112 SCt at 2137, 119 LEd2d 351. "General allegations" suffice at the pleading stage because it is "presume[d] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (quoting Lujan v. National Wildlife Federation, 497 US 871, 889, 110 SCt 3177, 3189, 111 LEd2d 695 (1990) (*Lujan I*)). When a motion for summary judgment is under consideration, however, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id*. (quoting *Gladstone Realtors*, 441 US at 115, n31, 99 SCt at 1616, n31, 60 LEd2d 66 (internal citation omitted)).

[¶24.] A plaintiff who challenges the legality of a government action or regulation has an additional burden when the government's allegedly illegal action or regulation acts upon a third party who is not the plaintiff.[5] *Id*. When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," the causation and redressability elements of standing hinge on what the third party's response will be to the government regulation. *Id*. at 562. Thus, the existence of standing in such cases "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id*. (quoting ASARCO Inc. v. Kadish, 490

---

5. The same applies to the government's failure to impose a specific regulation. *Lujan II*, 504 US at 561, 112 SCt at 2137, 119 LEd2d 351. However, the failure to regulate is not at issue in the present controversy.

US 605, 615, 109 SCt 2037, 2044, 104 LEd2d 696 (1989)) (additional citation omitted). When the regulation is focused on the conduct of some independent third party, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Id*. Showing standing under such circumstances is not precluded, but is "substantially more difficult." *Id*. (quoting Allen v. Wright, 468 US 767, 758, 104 SCt 3315, 3328, 82 LEd2d 556 (1984)).

[¶25.]        *(1) An injury in fact*

[¶26.]        Under SDCL 7-8-27, a circuit court obtains jurisdiction to hear an appeal from a decision by a county board of supervisors when filed by "any person aggrieved" by that decision.[6] The origins of the language "any person aggrieved" in SDCL 7-8-27 goes back to the early Dakota Territorial era. *See* Barnum v. Ewing, 53 SD 47, 220 NW 135, 137 (1928) (citing Laws Dakota 1874-75, c. 27, section 30). The right to appeal by a "person aggrieved" required a showing that the person suffered "a personal and pecuniary loss not suffered by taxpayers in general, falling upon him in his individual capacity, and not merely in his capacity as a taxpayer and member of the body politic of the county[.]" *Id*. at 137-38. "[O]nly such persons as might be able affirmatively to show that they were aggrieved in the sense that by the decision of the board they suffered the denial of some claim of

---

6.    It is important to note that in the event the allegedly illegal decision of a county board of supervisors affects all taxpayers in a particular political body, or a portion thereof, an appeal must be brought under SDCL 7-8-28 by fifteen named taxpayers who must petition the state's attorney to undertake the appeal. *See* SDCL 7-8-28.

right, either of person or property, or the imposition of some burden or obligation in their personal or individual capacity, as distinguished from any grievance they might suffer in their capacities as members of the body public." Cuka v. School Bd. of Bon Homme School Dist. No. 4-2 of Bon Homme County, 264 NW2d 924, 926 (SD 1978) (quoting Camp Crook Independent School Distr. No. 1 v. Shevling, 65 SD 14, 26, 270 NW 518, 524 (1936); Blumer v. School Board of Beresford Ind. Sch. Dist. No. 68 of Union County, 250 NW2d 282, 284 (SD 1977)). When the threatened injury "will affect not only the other freeholders besides the plaintiffs, but all the inhabitants of that local district, whether they are freeholders or not[,] the injury is not personal but rather an injury to all citizens and members of the community." Wood v. Bangs, 46 NW 586, 588, 1 Dakota 179 (DakotaTerr 1875).

[¶27.] Cable argues all that he was required to do under SDCL 7-8-27 was express his grievances by claiming he was currently or would be in the future, injured by the construction of the oil refinery. Cable claims it was enough for him to express fear of the exacerbation of his asthma and fear that the construction traffic and pollution would upset his quiet lifestyle in order to obtain status as a "person aggrieved." Cable cites to *Barnum v. Ewing*, 53 SD 47, 220 NW at 137-38, in support of his proposition. However, Cable's reliance on *Barnum* is misplaced.

[¶28.] Cable is correct with regard to his burden at the pleading stage. Cable needed to plead only general facts in support of his alleged injury. However, Cable was still required to plead a unique and personal injury as opposed to a general taxpayer injury in order to proceed under SDCL 7-8-27. Cable conceded that the injuries he anticipated he would suffer would also be suffered by other Union

County taxpayers. The degree of injury, according to the affidavits and testimony presented by Cable, depended on the proximity a taxpayer lived to the proposed site with at least one taxpayer who lived twenty-five miles from the site testifying that he would suffer but to a lesser degree than those in closer proximity.

[¶29.] While decided before this Court adopted the three-part test in *Lujan II*, *Barnum*, 53 SD 47, 220 NW 135, is instructive in determining when an injury is "personal" to the plaintiff versus general and shared in common with the body politic. In *Barnum*, a taxpayer sought to appeal the county commissioner's redistricting of three commissioner districts within Tripp County, South Dakota. 53 SD 47, 220 NW at 136. Barnum along with twelve other taxpayers made written demand upon the Tripp County state's attorney to appeal the action per the provisions of section 5886 of the Code of 1919. *Id.* (current version at SDCL 7-8-28). After the state's attorney refused to make the appeal, Barnum sought to do so individually under the other method available under section 5886 of the Code of 1919. *Id.* (current version at SDCL 7-8-27). In analyzing whether Barnum was a "person aggrieved" within the meaning of the statute, the Court analogized the effect of a claim against the county upon taxpayers. *Id.* at 137. It noted that a substantial taxpayer who suffers a greater mathematical loss than that of a smaller taxpayer does not incur a personal injury separate and distinct (meaning unique) from that of the lesser taxpayer sufficient to gain individual standing under the appeal statute because the loss is identical in nature. *Id.* Hence, the *Barnum* Court held that a loss that is different in amount but does not differ in nature or origin from that of all taxpayers is insufficient to support standing for an individual

appellant. *Id*. at 137-38. It is not enough to gain standing as an aggrieved person by suffering a loss that is "common in nature to a similar grievance suffered by all or *many* other electors or taxpayers." *Id*. at 138 (emphasis added). Barnum failed to show any personal injury and his appeal was dismissed. *Id*.

[¶30.] The rationale for limiting the right of appeal to only those persons who are actually aggrieved is to preclude "every citizen, elector, or taxpayer of a county who *deems himself* aggrieved in his capacity as a citizen, taxpayer, or elector" from appealing. *Id*. (emphasis added). Allowing any such citizen to bring suit would require state and county officers "to litigate . . . with every tax-payer, and thus the . . . business of the state would be transacted mainly in the courts." *Wood*, 46 NW at 588. "No private person or number of persons can assume to be the champions of the community, and in its behalf challenge the public officers to meet them in courts of justice to defend their official acts." *Id*.

[¶31.] The appellant in *Barnum* also alleged that he "felt aggrieved" by the decision of the Tripp County board of county commissioner to redistrict portions of the county with particular harshness resulting to the city of Winner in which Barnum resided. 53 SD 47, 220 NW at 137. This Court, however, ultimately determined that Barnum's allegation that he "felt aggrieved" by the redistricting of his commissioner's district was insufficient to establish standing under the predecessor to SDCL 7-8-27, section 5886 of the Code of 1919. *See id*. at 138. The Court did so based on Barnum's complaint, which stated that "the people in the first commissioner's district are not fairly represented on the board of county

commissioners and especially the people and taxpayers of the city of Winner, wherein this appellant has resided at all [times relevant]." *Id.* at 137.

[¶32.]     The instant case is substantially similar to *Barnum* in which the appellant claimed the electors and taxpayers of the first commissioner's district and especially the people and taxpayers of Winner were harmed by the Tripp County board of county commissioner's redistricting. Despite the allegation that Winner residents were harmed in a manner more egregious than the rest of the Tripp County residents, this Court held that was not enough. Similarly, Cable alleges in his brief that those citizens, taxpayers, and electors who live within a mile or less of the proposed refinery site will be personally injured and should have individual standing. He also elicited testimony that those living at a greater distance would be impacted, but to a lesser degree. Hence, the injuries that Cable insists will affect him personally, as well as Save Union County members Arden Hanson, Burdette Hanson, Harkness, and Quam, are not due to any loss of an individual right or some claim of right, either of person or property, or the imposition of some burden or obligation in their personal or individual capacity. Rather, any injury they may suffer in terms of diminution of the value of their real property or damage to their quiet rural lifestyle will be shared by all taxpayers and electors, but to a greater extent by those in closer proximity to the proposed refinery. This is not enough under our case law for Cable to gain standing as a "person aggrieved" under SDCL 7-8-27.

[¶33.]     What Cable's argument fails to ascertain is that "personal" in the context of SDCL 7-8-27 means he would be injured in a manner *unique* to him as an

individual and not in a manner that Cable would suffer in common with other taxpayers by virtue of his status as a member of the body politic. Instead, Cable argues that there is no injury more personal than the injury he would incur to his health and lifestyle. He does so by concluding that "personal" in the context of SDCL 7-8-27 means significant or important to him as a person rather than unique to him.

[¶34.] Cable's arguments on appeal fails given that the County's motion to dismiss for lack of subject matter jurisdiction was converted to a motion for summary judgment once the circuit court accepted testimony and affidavits outside the pleadings. The conversion of County's motion to dismiss to a motion for summary judgment was unopposed by Cable. Cable's allegations of an injury, which he considered to be personal and unique, although factually unsupported, might have been sufficient to survive at the motion to dismiss stage of this litigation. However, he introduced evidence by affidavit that a Union County taxpayer who lived some twenty-five miles from the proposed refinery site would also suffer the ill effects of the refinery, but to a lesser degree. Under *Barnum*, this precludes the use of SDCL 7-8-27. Cable in effect introduced evidence through his witness Kessler that all Union County taxpayers would suffer as a consequence of the proposed refinery but to varying degrees based on proximity, which served to negate Cable's claim that the injury would be unique and personal to him.

[¶35.]         *(2) A causal connection exists between the plaintiff's injury and the conduct of which the plaintiff complains*

[¶36.] Even if we were to set aside the personal and unique requirements in SDCL 7-8-27, Cable's claim would fail on a motion for summary judgment under the

second element of standing: causation. Cable still lacks standing as he was unable to show a causal connection between his alleged injuries and the conduct of which he complained. In this matter, the conduct of which Cable complains is the Union County Commissioners' action of granting the rezoning permit. However, it is the conduct of Hyperion, an independent third party, that in the future might cause pollution, diminution in property value, or loss of enjoyment of life as alleged by Cable. Because this issue was resolved on a motion for summary judgment, Cable cannot rest on the allegations in his pleadings, but rather must create questions of material fact that pollution, diminution of land value, and loss of quality of life have been caused by oil refineries.

[¶37.] Cable's testimony at the hearing on October 21, 2008, along with that of Burdette Hanson, was limited to what these two witnesses thought would happen to land values, air and ground water, and the quality of life for those living in close proximity to the refinery. It was not based on anything other than their subjective fears and concerns. There were no specific facts put forth to support Cable's general allegations of what harmful pollutants, traffic patterns, and the like, could or might be emanated by the oil refinery based on what had occurred in other locations in which oil refineries were introduced. There was nothing in the record to suggest that any such emissions were capable of destroying air and water quality, reducing Cable's quality of life, or aggravating Cable's asthma.

[¶38.] We have previously held that "[d]amages must be established by facts, not by legal argument alone." Estate of He Crow by He Crow v. Jensen, 494 NW2d 186, 192 (SD 1992) (holding issued in the context of a suit for wrongful death where

no facts were presented as to the value of the loss of decedent's services, yet a claim of a specific dollar amount in damages was made in closing arguments). We see no reason to apply a lesser standard in an appeal alleging personal injury or injury to property.

[¶39.]     We agree that exact evidence of these specific injuries would be difficult to produce at this time. However, Cable had the burden to plead sufficient specific facts to show that some type of actual or *threatened* injury would be caused by Hyperion in the manner in which it would construct or operate the oil refinery. He pleaded no specific facts to support his allegations that this proposed refinery posed these types of potential injuries, or that any other refineries had in the past created such injuries to individuals living in close proximity. Cable's mere allegations of injury might have been enough to survive the motion to dismiss, but were insufficient to overcome the motion for summary judgment.

[¶40.]     Something other than speculation and legal argument must be offered to overcome a motion for summary judgment on standing to show that the plaintiff was a "person aggrieved" within the meaning of SDCL 7-8-27. Otherwise, we violate our rule that subject matter jurisdiction cannot be conferred on a court "by the acts of the parties or the procedures they employ." *See Application of Koch Exploration Co.*, 387 NW2d at 536.

[¶41.]     The circuit court did not err when it concluded as a matter of law that Cable did not have standing to proceed under SDCL 7-8-27. While the circuit court did not specifically state Cable failed on both the injury in fact and causation elements of standing, its analysis makes it clear that these two elements were not

satisfied. Cable failed to establish he had standing by pleading and producing sufficient facts to show he had incurred a personal and unique injury in fact, and was unable to meet the causation element required for standing. Cable's remedy, therefore, was to proceed under SDCL 7-8-28 along with sufficient taxpayers to convince the state's attorney to file an appeal on behalf of Union County taxpayers as a group. His failure to elect the correct statute under which to prosecute the appeal was fatal to his cause of action and the circuit court was correct when it dismissed the appeal on County's motion for summary judgment.

[¶42.]     **2.     Whether the circuit court erred when it dismissed Save Union County for lack of standing as a "person aggrieved" within the meaning in SDCL 7-8-27.**

[¶43.]     Cable argues on appeal that Save Union County, as a membership organization, had standing to appeal the board of county commissioner's actions on behalf of its members. Cable cites to *Hunt v. Washington State Apple Advertising Commission*, 432 US 333, 343, 97 SCt 2434, 2441, 53 LEd2d 383 (1977) in support of his argument.

[¶44.]     The United States Supreme Court uses a three-part test for determining when an association has standing to bring suit on behalf of its members. *Id.* First, the association must show that "its members would otherwise have standing to sue in their own right[.]" *Id.* Next, it must show that "the interests it seeks to protect are germane to the organization's purpose[.]" *Id.* Finally, it must also show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.*

[¶45.]    Cable argues once again that mere general allegations as to the nature of the harm are sufficient to confer standing on a litigant at the motion to dismiss stage of litigation.  Cable's submission of affidavits and testimony into the record, along with his failure to object when the county did the same converted the motion to dismiss to a motion for summary judgment with its accompanying higher burden of persuasion.  Cable's argument fails at the motion for summary judgment level of proceedings as he failed to show the requisite level of specific facts as he did in Issue 1.

[¶46.]    Cable cites to *Sioux Falls Municipal Employees Ass'n Inc. v. City of Sioux Falls*, 89 SD 298, 303, 233 NW2d 306, 309 (1975) in support of his appeal.  In *Sioux Falls Municipal Employees Ass'n Inc.*, the association brought a declaratory action on behalf of its members after the City of Sioux Falls amended its civil service ordinance.  *Id*. at 307.  The amendment sought to exclude eighteen additional positions from the civil service system by labeling them as "appointed positions," from which an employee could be removed without the benefits and protections of the civil service system.  *Id*.  "[U]pon his removal from such appointive office, [the employee shall] be returned to his former position and paid as an employee of the City and the period of his tenure as an appointive officer shall be included in his Civil Service rights."  *Id*. at 308.  The Employees Association contended the amendment to the City's civil service ordinance was in violation of state statute, which provided that "subject to the restriction that once made effective such ordinances could not be repealed or modified so as to affect the standing of any employee then employed thereunder nor repealed except by an

initiated ordinance." *Id.* at 307 (citing Ch. 178, Laws of 1937). The City amended the ordinance to exclude the eighteen positions from the civil service system without conducting an initiated ordinance. The Employees Association brought a declaratory judgment action seeking to have the ordinance declared null and void. *Id.* The circuit court declared the amended ordinance to be null and void and declared that employees occupying the positions relabeled as "appointed positions" were reinstated to the civil service system. *Id.* at 308.

[¶47.] The City appealed and challenged the Employees Association's standing to bring a declaratory judgment action, while conceding it had standing under SDCL 60-90-1.[7] *Id.* at 309. This Court held on appeal that while none of the specific employees had been adversely affected at that point in time, the amendment adding eighteen "appointed positions" to the system would in the future have adverse effects on civil service employees in terms of job security, promotions, and job transfers. *Id.* It did so based on the specific harm that would occur in the future. *Id.* The harm in *Sioux Falls Municipal Employees Ass'n Inc. v. City of Sioux Falls*, was specific to the members of the Association who were at risk for

---

7. SDCL 60-90-1 provides:

> Any labor union, organization or association, whether or not it be incorporated, may sue or be sued in its organization or association name, as an entity and in behalf of the employees whom it represents, and all the funds and assets of such labor union, association or organization shall be subject to judgment, execution and other process. The service of summons, subpoena or other legal process upon an officer or agent of such labor union, association or organization shall constitute sufficient service upon such union, association or organization.

demotions, bumping by demoted "appointed persons," and job transfers to less desirable and potentially lower paid positions when an "appointed person" was demoted back to his or her original civil service position then occupied by another member of the association. *Id*. at 309. It was also specific to the eighteen incumbents occupying the additional "appointed positions" who could be demoted without the protections of the civil service system. *Id*.

[¶48.]        In the instant case, the allegations of injury by members of Save Union County are as non-unique and not personal to the members as Cable's allegations of injury were in Issue 1. None of the plaintiffs seeking to be added by amendment have alleged a harm or injury specific and personally directed at each of them that is distinct from the injuries to be suffered by the balance of the Union County body politic. Without knowing what emissions, traffic patterns, or noise and light levels will result from the construction and operation of the refinery, Cable and fellow Save Union County members assume that they, and only they, will be adversely affected, while at the same time introducing Kessler's affidavit that indicates all Union County taxpayers will be injured to some degree or another by the refinery. Save Union County have also failed to introduce sufficient specific facts to satisfy the causation element of standing as did Cable in Issue 1.

[¶49.]        Thus, the members of Save Union County, including Cable, do not have standing to bring the suit individually and Save Union County fails to meet the first element in the three-part test in *Hunt*. The circuit court did not err when it concluded as a matter of law that Save Union County did not have standing to bring the suit under SDCL 7-8-27.

[¶50.] Cable's additional argument that a self-induced piercing of the corporate veil of Save Union County should be permitted also would not change the outcome on the standing issue. Even if we were to hold that the corporate veil should be pierced, the members lack standing individually to bring the suit under SDCL 7-8-27. The same is true for Cable's argument that he should be permitted to amend the petition to name the members of Save Union County as individual plaintiffs in the action. If the amendment were allowed, the circuit court would be without subject matter jurisdiction to hear the matter as none of the plaintiffs have individual standing under SDCL 7-8-27 for the same reason Cable lacks standing. All of the members of Save Union County have alleged speculative injuries based on their fears of what might happen to their real property without alleging specific facts to show an injury in fact will be incurred that is unique and personal to the proposed plaintiffs and that the conduct of Hyperion will cause such injuries in the future.

[¶51.] **3.** **Whether the circuit court erred when it denied Cable's motion for summary judgment.**

[¶52.] On appeal, the Supreme Court has a duty to determine whether the circuit court had jurisdiction over the subject matter as a condition precedent to that circuit court's right to decide the issues before it. Hardy v. West Cent. School Dist. No. 49-7, 478 NW2d 832, 833 (SD 1991) (citing Long v. Knight Const. Co., Inc., 262 NW2d 207 (SD 1978); Sioux City Boat Club v. Mulhall, 79 SD 668, 117 NW2d 92 (1962)). Once a circuit court is found to have lacked subject matter jurisdiction, any judgment it entered in the matter is void. Wells v. Wells, 2005 SD 67, ¶11, 698 NW2d 504, 507 (citing Miller v. Weber, 1996 SD 47, ¶13, 546 NW3d 865, 868). If a

circuit court is without subject matter jurisdiction over the litigation initially presented to it, the Supreme Court does not acquire jurisdiction over that subject matter by the filing of appeal from a final order or judgment. Middle Creek School Dist. No. 18, of Butte County v. Butte County Bd. of Ed., 83 SD 107, 111, 155 NW2d 450, 452 (1968).

[¶53.] In the instant case, the circuit court was without jurisdiction to address Cable's motion for summary judgment due to lack of subject matter jurisdiction. This Court, therefore, is also without jurisdiction to consider Cable's motion for summary judgment on appeal as the order was entered by a circuit court without subject matter jurisdiction. The circuit court's order concerning its denial of Cable's motion for summary judgment is reversed and vacated.

[¶54.] We need not consider Issue 4 as raised by County for the same reasons as noted above. The circuit court's order concerning County's motion to dismiss based on the result of a referendum vote that approved the rezoning is reversed and vacated.

[¶55.] Affirmed as to Issues 1 and 2, and reversed and vacated as to Issues 3 and 4.

[¶56.] KONENKAMP, ZINTER, and SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶57.] MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.