#29195-r-PJD
**2020 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JEFFREY K. POWERS and
VICKY URBAN-REASONOVER,                    Petitioners and Appellants,

     v.

TURNER COUNTY BOARD OF
ADJUSTMENT,                                Respondent,

     and

STEVE SCHMEICHEL and
ETHAN SCHMEICHEL,                          Respondents and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRIS GILES
THE HONORABLE DAVID KNOFF
Judges

\* \* \* \*

MITCHELL A. PETERSON
REECE M. ALMOND of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota                  Attorneys for petitioners
                               and appellants.


BRIAN J. DONAHOE
DANIEL B. WEINSTEIN of
Donahoe Law Firm, P.C.
Sioux Falls, South Dakota                  Attorneys for respondents
                               and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 26, 2020
OPINION FILED **11/04/20**

#29195

DEVANEY, Justice

[¶1.]     After the Turner County Board of Adjustment approved an application for the construction and operation of a concentrated animal feeding operation, two landowners appealed the decision by petitioning the circuit court for a writ of certiorari under SDCL 11-2-61. On cross-motions for summary judgment, the circuit court dismissed the petitioners' appeal, concluding that they failed to show they were persons aggrieved and, thus, lacked standing to appeal under SDCL 11-2-61. We reverse and remand.

**Factual and Procedural Background**

[¶2.]     In March 2018, Steve and Ethan Schmeichel applied to the Turner County Zoning Office for a conditional use permit to operate a large concentrated animal feeding operation (CAFO). The CAFO would include a 5,400-head sow facility with 2,000 swine over 55 pounds. On April 10, 2018, the Turner County Commission, sitting as the Turner County Board of Adjustment (Board), held a hearing on the application. The Board chairman, Eric Meyer, participated in the hearing but abstained from voting because of a financial interest. Applicant Steve Schmeichel is a Turner County Commissioner and a member of the Board. He recused himself as a participating Board member and instead participated in the hearing as an applicant. Turner County resident Vicky Urban-Reasonover and other residents appeared at the hearing to object to the CAFO. At the conclusion of the hearing, the Board voted unanimously to approve the Schmeichels' application.

[¶3.]     On September 18, 2018, Jeffery Powers and Urban-Reasonover (the Petitioners) petitioned the circuit court for a writ of certiorari under SDCL 11-2-61.

-1-

They alleged that they own land near the proposed CAFO and are aggrieved by the Board's decision because the CAFO creates a serious risk of, among other things, pollution, increased odors and noise, and negative impact on their property values. They also alleged the Board's decision was illegal, asserting that the Board failed to comply with notice publication requirements and that the application was not approved with the minimum four affirmative votes required by the ordinance. They further alleged that participation in the hearing by two disqualified Board members caused actual bias or risk of actual bias in the voting members, and that the Board failed to regularly pursue its authority in approving the CAFO application. The Petitioners filed a motion for summary judgment on their writ, asserting that no material issues of fact were in dispute, and therefore, the court could determine as a matter of law that the Board's decision was illegal.[1]

[¶4.]     The Schmeichels, joined by Turner County, filed a cross-motion for summary judgment, asserting among other things, that the Petitioners lacked standing to appeal the Board's decision under SDCL 11-2-61. According to the Schmeichels, the Petitioners failed to allege facts sufficient to show that they are persons aggrieved by a decision of the Board. The Schmeichels acknowledged that the CAFO could affect the Petitioners' enjoyment of their property and that the effect on them could be greater than the effect on other Turner County residents.

---

1.     The Petitioners asserted that there is no dispute that the Board voted to approve the CAFO without the requisite Board composition. The Petitioners further claimed that the Board's decision was illegal as a matter of law because a disqualified member (Meyer) participated in the hearing and the Board published notice of the April 2018 hearing in the Hurley newspaper when it should have published notice in the Parker newspaper.

However, the Schmeichels asserted that the Petitioners failed to allege a unique or personal injury, separate and distinct from similar Turner County residents. In response, Urban-Reasonover submitted an affidavit stating that her residence and property is less than 3/4 of a mile from the proposed CAFO, and if built, the operation will cause her property to be substantially devalued because of noxious odors and noise.

[¶5.] The circuit court held a hearing on the issue of standing and thereafter issued a memorandum decision. Applying *Cable v. Union County Board of County Commissioners*, 2009 S.D. 59, 769 N.W.2d 817, the court found that the Petitioners failed to present sufficient evidence to establish standing. The court determined that "[t]here is simply nothing in the record to support [Affiant Urban-Reasonover's] *allegations* that noxious odors and noise will invade her property . . . ." In the court's view, it was "left to decide whether 3/4 of a mile is significant without any evidence with which to" determine whether the Petitioners are persons aggrieved. However, the court did not grant summary judgment to the Schmeichels and Turner County because the Petitioners had made a timely request for discovery under SDCL 15-6-56(f).[2] The court therefore granted the Petitioners 45 days from the date of the June 13, 2019 decision to submit additional evidence to show standing.

---

2. Under SDCL 15-6-56(f): "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

[¶6.]     Instead of submitting additional evidence, the Petitioners filed a motion to reconsider and a motion to compel discovery.  They asserted that the circuit court's previous ruling was no longer valid in light of *Abata v. Pennington County Board of Commissioners*, 2019 S.D. 39, 931 N.W.2d 714.[3]  The circuit court disagreed that *Abata* changed the inquiry in this case because *Abata* did not address SDCL 11-2-61, and like the petitioners in *Cable*, the Petitioners here were required to show they are persons aggrieved.  The circuit court denied the Petitioners' request to compel discovery and gave the Petitioners until September 23, 2019, to submit evidence on standing.

---

3.     In *Abata*, a group of citizens instituted a declaratory judgment action challenging the validity of a county zoning ordinance.  In considering whether the citizens lacked standing to challenge the ordinance, the Court did not apply the "person aggrieved" standing inquiry from *Cable* because "the statutory basis for [an appeal in *Abata*] is different than in *Cable*[.]"  2019 S.D. 39, ¶ 11, 931 N.W.2d at 719.  We noted that declaratory judgment actions are "remedial in nature and should be construed liberally," and applied the "injury in fact" (Article III standing) analysis in light of the slightly different language in SDCL 21-24-3 which authorizes persons whose rights are "affected" by an ordinance to bring such an action.  2019 S.D. 39, ¶¶ 11–12.  We then referred to *Croell Redi-Mix, Inc., v. Pennington County Board of Commissioners*, a case involving whether citizens had standing to appeal a planning commission's decision to the board of county commissioners under an ordinance containing language similar to that contained in the declaratory judgment statute.  2017 S.D. 87, 905 N.W.2d 344.  The county ordinance in *Croell* granted a right to appeal to "all who are *affected* by the Planning director's administering of [the applicable ordinance]."  *Id.* ¶ 14, 905 N.W.2d at 348.  In *Croell*, the Court declined to apply the standing analysis from *Cable* because the "person *aggrieved*" language in SDCL 7-8-27 "is substantially narrower than" the "*affected*" language in the Pennington County zoning ordinance that was at issue in the case, and the appeal at issue was an inter-agency appeal, rather than an appeal to a circuit court which would implicate judicial case-or-controversy standing requirements.  *Id.*

[¶7.] On September 20, 2019, the Petitioners submitted an expert report and affidavit from appraiser Steven Shaykett related to the CAFO's effect on the value of Urban-Reasonover's property. In his report, Shaykett opined that if the CAFO is constructed as proposed, the value of Urban-Reasonover's property would be reduced by $48,000. The Petitioners also submitted an expert report and affidavit from Anton Jitnikovitch on an "Odour Impact Simulation." In his report, Jitnikovitch opined that Urban-Reasonover's property would experience complaint-triggering odors from the proposed CAFO "72.4% of days."

[¶8.] After the Petitioners submitted this evidence, the circuit court judge recused himself and another judge was assigned to the case. The Schmeichels, joined by Turner County, filed a supplemental brief on October 28, 2019, responding to the Petitioners' evidence on standing. After a hearing on November 4, 2019, the reassigned judge granted the Schmeichels summary judgment, concluding that the Petitioners lacked standing because they failed to show that they have a unique injury compared to other Turner County residents. The court declined to rule on the Petitioners' motion for summary judgment and dismissed their appeal.

[¶9.] The Petitioners now appeal to this Court, asserting that the circuit court erred in concluding they lacked standing to appeal under SDCL 11-2-61.

### Standard of Review

[¶10.] Our standard of review from a decision granting summary judgment is well settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party

> and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Brandt v. Pennington Cnty.*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745).

## Analysis and Decision

[¶11.]      The Petitioners argue that the circuit court erred in concluding as a matter of law that they did not present sufficient facts demonstrating a unique and personal injury compared to Turner County taxpayers in general.[4] They further assert that the circuit court judge improperly weighed evidence from their experts and applied his professed personal knowledge about odor dispersion and CAFOs in rejecting the expert evidence.

[¶12.]      The Schmeichels, joined by Turner County, contend the circuit court properly concluded that the Petitioners are not persons aggrieved under SDCL 11-2-61 because the alleged harm—increased noise, dust, and odor, and reduced property

---

4.      The Petitioners also argue that the circuit court erred in concluding that they lacked standing because, according to the Petitioners, the Board violated their due process rights, and on that claim alone, they have established standing under SDCL 11-2-61. As support, they direct this Court to *Armstrong v. Turner County Board of Adjustment*, 2009 S.D. 81, 772 N.W.2d 643. However, *Armstrong* was decided when a *taxpayer* could appeal under SDCL 11-2-61 without having to establish aggrieved status. *See Lake Hendricks Imp. Ass'n v. Brookings Cnty. Planning and Zoning Comm'n*, 2016 S.D. 48, ¶ 22, 882 N.W.2d 307, 314. After *Lake Hendricks,* the Legislature amended SDCL 11-2-61 to require the aggrieved status in any appeal under the statute. The Petitioners must therefore show they are persons aggrieved.

value—would be suffered by all residents living near the proposed CAFO. To support their argument that the Petitioners' injury is not personal or unique, the Schmeichels direct this Court to the "Right to Farm Covenant" running with the land for all Turner County residents in the A-1 Agricultural District. That covenant provides:

> You are hereby notified that the property on which you are constructing a structure is in or near agricultural land, agricultural operations or agricultural processing facilities or operations. You may be subject to inconvenience or discomfort . . . . Discomforts and inconveniences may include, but are not limited to: noise, odors, fumes, dust, smoke, burning, vibrations, insects, rodents, and/or the operation of machinery (including aircraft) during any twenty-four hour period. If you live near an agricultural area, you should be prepared to accept such inconveniences or discomforts as a normal and necessary aspect of living in an area with a strong rural character and an active agricultural sector. You are also notified that there is the potential for agricultural or agricultural processing operations to expand.

The Schmeichels argue that this covenant precludes the Petitioners from establishing standing because the Petitioners' property is outside the setbacks required by the county ordinance for the CAFO, and therefore, "the amount of odor, dust, noise or other alleged harm from the operation of the CAFO [was] considered to be reasonable for those existing residences and other landowners in the area." The Schmeichels further assert that nothing in the Petitioners' application, evidence, or comments submitted at the hearing indicated that their proposed CAFO would require additional protections.[5]

---

5.    The Schmeichels ask this Court to declare that this appeal cannot lie when, in their view, the Petitioners in effect request that the Board increase the setbacks required under the applicable ordinances. The Schmeichels assert

(continued . . .)

[¶13.] "A litigant must have standing in order to bring a claim in court." *Lippold v. Meade Cnty. Bd. of Comm'rs*, 2018 S.D. 7, ¶ 18, 906 N.W.2d 917, 922. Further, "[a]though standing is distinct from subject-matter jurisdiction, a circuit court may not exercise its subject-matter jurisdiction unless the parties have standing." *Id.* "Subject matter jurisdiction is conferred solely by constitutional or statutory provisions." *Cable*, 2009 S.D. 59, ¶ 20, 769 N.W.2d at 825 (citation omitted). The statute governing the Petitioners' application authorizes a particular class of plaintiffs to bring suit under SDCL chapter 11-2: "*Any person or persons, jointly or severally*, or any taxpayer, or any officer, department, board, or bureau of the county, *aggrieved by any decision* of the board of adjustment may present to a court of record a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality." SDCL 11-2-61 (emphasis added).

[¶14.] The parties do not dispute that the Petitioners must set forth sufficient evidence to show that they are *persons aggrieved* by the Board's decision in order to appeal under this statute. However, they disagree as to what type of evidence

---

(. . . continued)

that the Turner County ordinance does not authorize an increase based on the characteristics of a particular operation. They cite *Adolph v. Grant County Board of Adjustment* for the proposition that "[b]ecause the board was not *required* to consider increasing the minimum setbacks, its decision not to do so was legal." *See* 2017 S.D. 5, ¶ 20, 891 N.W.2d 377, 384 (emphasis added). There are multiple flaws in the Schmeichels' argument. First, they do not direct this Court to any particular ordinance provision to support their claim. Second, the Turner County ordinance does in fact authorize the Board to impose additional conditions, including setbacks, to control such things as odor, air, and water pollution. In any event, unlike the claims raised in *Adolph*, we do not construe the Petitioners' appeal here as an allegation that the Board failed to consider increasing the minimum setbacks.

supports such a finding. The Schmeichels rely on *Cable*, 2009 S.D. 59, 769 N.W.2d 817, and contend that "[c]omplaints of harm due to proximity to the project are not sufficient." According to the Schmeichels, *Cable* requires that the Petitioners establish a unique injury as compared to all residents *living near* the proposed CAFO upon construction and operation. The Petitioners, on the other hand, argue that *Cable* is not controlling because the Court in that case interpreted SDCL 7-8-27, which pertains to "any person aggrieved" by a board of county commissioners decision, whereas SDCL 11-2-61 allows "[a]ny person or persons, *jointly or severally*, . . . aggrieved by any decision of the board of adjustment" to appeal. (Emphasis added.) The Petitioners further claim that if the reasoning in *Cable* applies to SDCL 11-2-61, *Cable* does not require evidence of an "ultra-unique injury" as suggested by the Schmeichels, but rather an injury that differs from *taxpayers in general*.[6]

---

6.    In support of their argument, the Petitioners note that in *Huber v. Hanson County Planning Commission,* this Court found that a claim that the construction and operation of a 2,400-pig nursery operation "will result in unmanageable manure and odor control on Hubers' adjacent property" was "sufficient [under SDCL 11-2-61] to plead an injury unique to the Hubers." 2019 S.D. 64, ¶ 18, 936 N.W.2d 565, 571. The appeal in *Huber* pertained to a dismissal of a petition on a motion to dismiss because of the type of writ being sought. In reversing this dismissal, the Court addressed the four procedural requirements that must be met to confer jurisdiction to the circuit court, one of which is standing. We concluded that the Hubers had sufficiently pled "general allegations" necessary to support standing, but we declined to consider the merits of their factual claims related to standing. *Id.* We indicated that if standing is disputed on remand, the circuit court could determine the issue after a factual record was more fully developed. *Id.* ¶ 19. *See Benson v. State*, 2006 S.D. 8, ¶ 29, 710 N.W.2d 131, 143 (Zinter, J., concurring specially) (discussing the manner and degree of proof necessary to sustain the burden of showing standing at various stages of a proceeding)

(continued . . .)

[¶15.] In *Cable*, the Union County Board of Commissioners granted a rezoning permit to Hyperion, LLC for the construction of an oil refinery. 2009 S.D. 59, ¶ 2, 769 N.W.2d at 821. Cable filed an appeal under SDCL 7-8-27, challenging the board's decision. The county moved to dismiss the appeal, contending that Cable lacked standing because he alleged no personal or individual grievance and was not an owner of real property in Union County.[7] *Id.* ¶ 4. Cable claimed he had an equitable interest in the property, even though he did not own it. He further contended that his alleged injury—"his right to live without pollution affecting his living quarters and usual quiet and peaceful rural lifestyle in Union County"—was sufficient. *Id.* ¶ 5, 769 N.W.2d at 821–22. Cable's affidavit filed in support of his claim that he is a *person aggrieved* identified a number of potential injuries: air, water and ground pollution; heavy traffic; rowdy behavior by construction workers;

---

(. . . continued)
(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992)).

7. Similarly, the petitioner, Save Union County LLC, did not own real property in Union County. *Cable*, 2009 S.D. 59, ¶ 4, 769 N.W.2d at 821. Several members of the LLC were property owners in Union County and submitted affidavits alleging they would be impacted by the refinery. The individual members also sought to amend the petition to be added as parties, but the circuit court denied the amendment. The court concluded that the proposed amendment did not relate back to the time of the appeal and was untimely under SDCL 7-8-29. *Id.* ¶ 11, 769 N.W.2d at 823. More pertinent to the case here is this Court's determination in *Cable* that the LLC lacked representational standing because the members who submitted affidavits did not allege "a harm or injury specific and personally directed at each of them that is distinct from the injuries to be suffered by the balance of the Union County body politic." *Id.* ¶ 48, 769 N.W.2d at 832.

possible explosions and fires; diminution in property value; and water drainage issues. *Id.* ¶ 6, 769 N.W.2d at 822.

[¶16.] Ultimately, the circuit court found Cable's evidence insufficient to show that his alleged personal injuries were different than those that might be suffered by the general public. *Id.* ¶ 14. The court noted that Cable offered no expert testimony related to how the proposed refinery would affect his asthma or how the refinery could contaminate the aquifer under his property. Finally, the court "concluded that Cable's claims as to noise, smell, light, and traffic from the proposed refinery were speculative, and that Cable failed to provide any specific evidence that the traffic on the road where he lived would be heavier than in other parts of the county." *Id.*

[¶17.] On appeal, we examined what is meant by the language "any person aggrieved" in SDCL 7-8-27. *Id.* ¶ 26, 769 N.W.2d at 827. We noted the phrase "'person aggrieved' required a showing that the person suffered 'a personal and pecuniary loss not suffered by taxpayers in general, falling upon him in his individual capacity, and not merely in his capacity as a taxpayer and member of the body politic of the county[.]'" *Id.* (quoting *Barnum v. Ewing*, 53 S.D. 47, 220 N.W. 135, 137–38 (1928)).[8] We further explained that persons aggrieved are "only such

---

8.  *Barnum*, a case involving a county commission's redistricting of the commissioner districts, represents a classic example of a harm suffered by all or many of the taxpayers. Barnum challenged the board's decision, alleging it failed to comply with governing statutes when redistricting. However, Barnum did "not claim to stand in any other or different position from any other resident taxpayer or elector of the county . . . ." 53 S.D. 47, 220 N.W. at 137. Rather, his interest was "an interest common to all, and exists solely because of the fact that they are taxpayers, and, while it may differ in

(continued . . .)

persons as might be able affirmatively to show that they were aggrieved in the sense that by the decision of the board they suffered the denial of some claim of right, either of *person or property*, or the imposition of some burden or obligation in their personal or individual capacity . . . ." *Id.* (emphasis added) (quoting *Cuka v. School Bd. of Bon Homme School Dist. No. 4-2 of Bon Homme Cnty.*, 264 N.W.2d 924, 926 (S.D. 1978)). "When the threatened injury 'will affect not only the other freeholders besides the plaintiffs, but all the inhabitants of that local district, whether they are freeholders or not[,] the injury is not personal but rather an injury to all citizens and members of the community.'" *Id.* (quoting *Wood v. Bangs*, 46 N.W. 586, 588, 1 Dakota 179 (Dakota Terr. 1875)).

[¶18.]       From our review of *Cable* and this Court's cases going back to the early Dakota Territorial era, we conclude the language in *Cable* relating what is meant by *any person aggrieved* under SDCL 7-8-27 likewise applies to SDCL 11-2-61, even though the language of the two statutes is not identical. But this does not mean that in order to appeal under SDCL 11-2-61, one must show an injury that is "'unique when compared with injuries suffered by others' *living within the same proximity* of the proposed site." *See* Schmeichels' Brief p. 22–23 (emphasis added). On the contrary, in *Cable*, the Court held that a petitioner is "required to plead a unique and personal injury as opposed to *a general taxpayer injury* in order to proceed under SDCL 7-8-27." 2009 S.D. 59, ¶ 28, 769 N.W.2d at 828 (emphasis

---

(. . . continued)
    amount, it does not differ in nature or origin among any of the taxpayers."
    *Id.*

added).[9]  In finding the *Cable* petitioners' showing to be insufficient, we noted that "any injury they may suffer in terms of diminution of the value of their real property or damage to their quiet rural lifestyle will be shared by *all taxpayers and electors*, but to a greater extent by those in closer proximity to the proposed refinery."  2009 S.D. 59, ¶ 32, 769 N.W.2d at 829 (emphasis added).

[¶19.]     The latter portion of this statement from *Cable* has been quoted to suggest a stringent standard wherein concerns shared by others in close proximity to the proposed site are never unique.  *See Abata*, 2019 S.D. 39, ¶ 10, 931 N.W.2d at 719.  To the extent that *Abata's* characterization of *Cable* seems to support such a suggestion, we now take this opportunity to clarify our holding in *Cable*.[10]  The Court's conclusion that the petitioners in *Cable* lacked standing must be examined in light of Cable's specific claims and the evidence presented to the circuit court. This evidence consisted not only of testimony from the residents residing in close proximity to the proposed refinery, but also included an affidavit from a resident

9.     A review of cases from other jurisdictions and secondary sources related to land-use decisions by boards reveals no clear definition of *person aggrieved*. As one commentator noted, "Some courts have accordingly ruled that proximity establishes a prima facie case or a presumption of standing."  4 Am. Law. Zoning § 42:17 (5th ed.).  The commentator further noted that other courts have required that a plaintiff show a particularized injury in addition to proximity.  *Id.*  Yet other courts have found aggrievement when a land-use decision will decrease the value of the plaintiff's land.  *Id.*

10.    The Schmeichels' reliance on *Cable* and *Abata* to support a heightened requirement for standing is misplaced.  In *Abata*, our limited discussion of *Cable* was dicta because *Abata* did not involve the interpretation of a statute containing the term "persons aggrieved."  2019 S.D. 39, ¶¶ 10–11, 931 N.W.2d at 719 (citing *Cable*, 2009 S.D. 59, ¶ 32, 769 N.W.2d at 829).  More importantly, *Abata* did not relate the crux of the determination in *Cable*, which focused on the fact that the injuries alleged would be shared by all the taxpayers and electors of the county.

who lived some twenty-five miles from the proposed site attesting that he "would also suffer the ill effects of the refinery, but to a lesser degree." *Cable*, 2009 S.D. 59, ¶ 34, 769 N.W.2d at 829. As such, this Court concluded that "Cable in effect introduced evidence . . . that *all* Union County taxpayers would suffer as a consequence of the proposed refinery but to varying degrees based on proximity, which served to negate Cable's claim that the injury would be unique and personal to him." *Id.* (emphasis added).

[¶20.] Here, in contrast, the Petitioners did not assert in their petition that all or many other Turner County residents would be aggrieved in a similar manner. Rather, Urban-Reasonover attested that "[o]ther taxpayers in Turner County who live or own property several miles from the proposed site will *not* experience any noxious odors or noise from" the CAFO. (Emphasis added.) Moreover, in resisting summary judgment, the Petitioners submitted an affidavit from Urban-Reasonover and expert reports from appraiser Shaykett and Jitnikovitch to support that they "might be able affirmatively to show" that Urban-Reasonover was aggrieved because the Board's decision imposed a burden on Urban-Reasonover in her personal capacity as distinguished from any grievance she might suffer in her capacity as a member of the body politic. Urban-Reasonover attested that her property is 3/4 of a mile from where the proposed CAFO would be built. She claimed that she has "considered operating a bed and breakfast from [her] property in the future for retirement income." She alleged that if the CAFO is constructed as proposed, "noxious odors and noise will unreasonably invade [her] property and annoy the comfort and repose of [her] property." She further alleged that the

construction and operation of the proposed CAFO would "cause [her] property to be substantially devalued in ways other taxpayers of Turner County will not be harmed." Appraiser Shaykett's report related his expert opinion that Urban-Reasonover's property, with the proposed CAFO constructed and operating, will reduce in value by $48,000. Jitnikovitch's report related his expert opinion that if the CAFO is constructed and operated as planned, Urban-Reasonover's property will experience complaint-triggering odors "72.4% of days."[11]

[¶21.] The Schmeichels contend that the circuit court, in rejecting the Petitioners' expert evidence as unreliable and speculative, properly exercised its role as a "gate keeper" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). However, the Schmeichels did not file a formal *Daubert* motion to challenge either expert's opinions on summary judgment, which would have given the Petitioners the opportunity to respond and further develop the factual record upon which a *Daubert* ruling could be based. Moreover, the record reveals that the Petitioners' expert evidence was rejected because it did not comport with *the circuit judge's* personal knowledge and understanding of CAFOs derived, in part, from the judge's past experience as a state's attorney and county commissioner. It is also apparent from the court's comments that the court was weighing the Petitioners' proffered evidence against the court's personal knowledge of how CAFOs are operated.

---

11. The Schmeichels did not offer competing expert opinions, nor did they request additional time to depose the Petitioners' experts.

[¶22.] It is well settled that a court is not to weigh the evidence at the summary judgment stage. *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 42, 855 N.W.2d 855, 868. Rather, evidence must be viewed most favorably to the nonmoving party when determining "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). Notably, parties opposing summary judgment need only "substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 13, 859 N.W.2d 618, 624 (quoting *Estate of Elliott v. A & B Welding Supply Co.*, 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710).

[¶23.] From our review of the evidence viewed in a light most favorable to the Petitioners, we conclude that the Petitioners have set forth sufficient specific facts to show "a personal and pecuniary loss not suffered by taxpayers in general, falling upon [a petitioner] in [an] individual capacity, and not merely in [the] capacity as a taxpayer and member of the body politic of the county[.]" *See Cable*, 2009 S.D. 59, ¶ 26, 769 N.W.2d at 827 (quoting *Barnum*, 53 S.D. 47, 220 N.W. at 137–38). First, unlike the plaintiff in *Cable*, the Petitioners did not rest upon mere allegations and legal argument. *See, e.g., id.* ¶¶ 34, 39. They substantiated their allegations with expert opinions rather than relying on mere speculation, conjecture, or fantasy. Second, although the Schmeichels argue that the Right to Farm Covenant establishes that the Petitioners' alleged inconveniences and discomforts are not

personal or unique, namely because they are similarly suffered by other residents of the county, the Petitioners offered evidence in support of their allegation that the proposed CAFO will injure them beyond the inconveniences and discomforts related in the Covenant.

[¶24.]     For these reasons, the circuit court erred when it granted summary judgment dismissing the Petitioners' appeal for an inadequate showing of standing. We therefore reverse and remand for further proceedings.

[¶25.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER, Justices, concur.