#29226-aff in pt & rev in pt-PJD
**2021 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SIERRA CLUB,                                  Petitioner and Appellant,

    v.

CLAY COUNTY BOARD OF
ADJUSTMENT, TRAVIS MOCKLER,
and JILL MOCKLER,                             Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TAMI A. BERN
Judge

* * * *

MITCHELL A. PETERSON
REECE M. ALMOND of
Davenport, Evans, Hurwitz,
   & Smith, LLP
Sioux Falls, South Dakota                     Attorneys for petitioner
                                              and appellant.


JAMES S. SIMKO of
Cadwell, Sanford, Deibert,
   & Garry, LLP
Sioux Falls, South Dakota                     Attorneys for appellee, Clay
                                              County Board of Adjustment.


BRIAN J. DONAHOE of
Donahoe Law Firm, P.C.
Sioux Falls, South Dakota                     Attorneys for appellees, Travis
                                              Mockler and Jill Mockler.

* * * *

ARGUED
OCTOBER 7, 2020
OPINION FILED **05/05/21**

#29226

DEVANEY, Justice

[¶1.]     This appeal concerns whether, in response to a motion to dismiss under SDCL 15-6-12(b)(1), Sierra Club established standing under SDCL chapter 11-2 to challenge the Clay County Board of Adjustment's decision affirming the issuance of a permit for the operation of a concentrated animal feeding operation in Clay County. The circuit court concluded that Sierra Club lacked standing to bring suit in its own right because it is not a person aggrieved and also lacked representational standing because participation in the lawsuit by Sierra Club's individual members is required. Sierra Club appeals. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

[¶2.]     Travis and Jill Mockler applied for a conditional use permit in February 2019 to operate a concentrated animal feeding operation (CAFO) in Clay County, South Dakota. The Clay County Planning Commission granted the permit, and Sierra Club appealed pursuant to the Clay County Ordinances. After multiple hearings before the Clay County Board of Adjustment, the Board affirmed the permit decision with additional conditions.

[¶3.]     In September 2019, Sierra Club filed a petition in circuit court under SDCL chapter 11-2 seeking a writ of certiorari and reversal of the decision to grant the Mocklers' permit. It alleged a due process violation because the appeal of the Planning Commission's decision was heard by the Board of Adjustment when the Clay County Ordinances required it to be heard by the Board of Commissioners. Sierra Club further asserted that it did not have a fair and impartial hearing before

-1-

the Board. Finally, Sierra Club claimed the Board failed to regularly pursue its authority when it approved the permit and also that the decision to grant the permit was illegal in light of the ordinances governing CAFOs.

[¶4.] Rather than responding to the writ, the Mocklers and the Board filed separate motions to dismiss Sierra Club's petition under SDCL 15-6-12(b)(1) for lack of subject matter jurisdiction. Only the Mocklers submitted a brief in support, which the Board joined. The Mocklers asserted that dismissal was appropriate because Sierra Club had failed to establish standing in its initial appeal of the *Planning Commission's* decision to the Board. They alternatively claimed that in Sierra Club's appeal of the Board's decision to the circuit court, Sierra Club failed to establish that it has individual standing as a person aggrieved. Lastly, they asserted that Sierra Club lacks representational standing because its petition does not sufficiently set forth that its members are persons aggrieved and that the claims asserted and relief requested do not require participation of the individual members.

[¶5.] At the hearing on the motion to dismiss, the Mocklers noted the atypical posture of the case in that they filed their motion to dismiss before the circuit court could issue a provisional writ commanding the Board to submit a complete record of the proceedings below. The Mocklers explained that they brought the motion to dismiss because they did not want to delay the matter any longer. The Mocklers also suggested that the circuit court was not required to consider their motion to dismiss to be a facial attack on Sierra Club's petition whereby the allegations therein would be accepted as true. Rather, they claimed

that because their motion to dismiss offers factual information not appearing in Sierra Club's petition, namely an affidavit from Travis Mockler alleging that he had objected to Sierra Club's standing to appeal the Planning Commission's decision during the proceedings held before the Board, Sierra Club should have provided more than conclusory allegations in its petition to support that it has standing. Finally, the Mocklers asserted that regardless of whether their motion is construed to be a facial or factual attack, Sierra Club lacks standing because the petition does not support that Sierra Club or its members are persons aggrieved.

[¶6.]       Sierra Club disputed that it was required to submit additional evidence to support standing under SDCL 11-2-61. It claimed that because the Mocklers filed a motion to dismiss under SDCL 15-6-12(b)(1), the motion must be treated as a facial attack on the pleadings, and at this juncture, general allegations suffice and must be accepted as true. Sierra Club further claimed that it is immaterial whether the Mocklers challenged standing below because even if standing had been addressed, they did not appeal the Board's ruling; therefore, the issue of standing to appeal the Planning Commission's decision was not properly before the circuit court. Sierra Club maintained that the only issue before the circuit court is whether it has standing to appeal the Board's decision.

[¶7.]       At the conclusion of the hearing, the circuit court issued an oral ruling granting the motion to dismiss. The court did not specifically consider whether Sierra Club had standing at the inter-agency level to appeal the Planning Commission's decision to the Board. The court only addressed whether Sierra Club has standing to appeal the Board's decision to the circuit court. On that question,

the court considered the motion to dismiss to be a facial attack after finding "no evidence of a factual dispute aside from a cursory affidavit" filed by Travis.

[¶8.]     In regard to whether Sierra Club has standing in its own right, the circuit court assumed Sierra Club is a person or persons as contemplated under SDCL 11-2-61. It then determined that Sierra Club failed to establish on the face of the petition that it has standing in its own right because the petition did not allege any actual harm to support that Sierra Club was directly aggrieved by the Board's decision. The court further concluded that Sierra Club failed to establish representational standing, finding that although the petition supports that its members would have standing to sue in their own right, Sierra Club "cannot prove [its] members are aggrieved without evidence from those members." The court rejected Sierra Club's alternative argument submitted in a brief prior to the hearing that its petition brought a mandamus action under SDCL 11-2-35, noting that the petition did not plead or request mandamus relief. The court further concluded that a mandamus action would not be proper because SDCL 11-2-61.1 provides that a writ of certiorari is the exclusive avenue to appeal a decision to grant a conditional use permit.

[¶9.]     Sierra Club appeals, asserting the following issues for review:

> 1.     Whether the circuit court erred in determining that the petition did not assert a claim for mandamus relief under SDCL 11-2-35.
>
> 2.     Whether the circuit court erred in determining that Sierra Club lacked standing to bring suit in its own right under SDCL 11-2-61.
>
> 3.     Whether the circuit court erred in concluding that Sierra Club lacked representational standing.

## Standard of Review

[¶10.] "Issues of jurisdiction are questions of law, and we review a dismissal for lack of jurisdiction de novo." *Huber v. Hanson Cnty. Planning Comm'n*, 2019 S.D. 64, ¶ 10, 936 N.W.2d 565, 569. Further, "[a] motion to dismiss tests the legal sufficiency of the pleadings, and therefore, we review the circuit court's decision on the motion de novo." *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 408.

## Analysis and Decision

### 1. Whether the circuit court erred in determining that the petition did not assert a claim for mandamus relief under SDCL 11-2-35.

[¶11.] Sierra Club acknowledges that its petition does not specifically use the word *mandamus* or cite SDCL 11-2-35. However, it asserts that such lack of technical words or specific form is inconsequential under South Dakota's liberal notice pleading rules. *See* SDCL 15-6-8(a) (providing that the petition need only contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief . . ."). Sierra Club also directs this Court to our recent decision in *Huber*, wherein we determined that although the petitioner did not use the phrase "writ of certiorari," the petition satisfied the requirements for bringing an appeal under SDCL 11-2-61. *See* 2019 S.D. 64, ¶¶ 14–15, 936 N.W.2d at 570.

[¶12.] This case is unlike *Huber*. In *Huber*, we recognized that although the Hubers did not use the phrase "writ of certiorari," their application presented alternative challenges to the Board's decision, including a request for "judicial review through a verified petition alleging the illegality of the Board's decision." *Id.*

¶ 14. Here, in contrast, Sierra Club's petition initially states that Sierra Club "presents to the Court this duly verified Petition seeking a writ of certiorari and reversal of the decision set forth below, which decision is illegal as explained in this Petition." Nothing in the petition or its prayer for relief seeks to compel performance of a duty by an official or officials in light of "a clear legal right to performance of the specific duty sought to be compelled" and a "definite legal obligation to perform that duty." *Sorrel v. Queen of Peace Hosp.*, 1998 S.D. 12, ¶ 6, 575 N.W.2d 240, 242 (describing what is required to obtain mandamus relief); SDCL 11-2-35 (authorizing mandamus actions to compel specific performance of a duty required by statute or ordinance). Instead, Sierra Club's prayer for relief requests a reversal or modification of the Board's decision and a voiding of the conditional use permit or, alternatively, a remand to the Board for further investigation and consideration.

[¶13.] Even if the petition could be construed to include a request for mandamus relief, such avenue for relief is unavailable to Sierra Club in challenging the permit decision at issue. As we recognized in *Huber*, "the Legislature has provided a remedy in the form of a writ of certiorari to review county zoning decisions" in SDCL 11-2-61.1. 2019 S.D. 64, ¶ 13, 936 N.W.2d at 570. When Sierra Club initiated this suit, SDCL 11-2-61.1 provided that "*[a]ny appeal* of a decision relating to the grant or denial of *a conditional use permit* shall be brought under a petition, duly verified, for a writ of certiorari directed to the approving authority and, notwithstanding any provision of law to the contrary, shall be determined under a writ of certiorari standard regardless of the form of the approving

authority."[1]  (Emphasis added.)  The circuit court properly concluded that Sierra

Club did not and could not assert a claim for relief under SDCL 11-2-35.

### 2. Whether the circuit court erred in determining that Sierra Club lacked standing to bring suit in its own right under SDCL 11-2-61.

[¶14.]      Sierra Club claims that the circuit court erred in concluding that it

failed to establish on the face of the petition that it is a person aggrieved by the

Board's decision.  In its view, it is a person aggrieved because the wrong entity

heard its appeal from the Planning Commission decision and because the Board

was biased, thereby depriving Sierra Club of due process.  Sierra Club further

asserts that it was aggrieved by the Board's decision because the proposed CAFO

"will negatively impact the air, water, and soil resources that Sierra Club seeks to

protect."

[¶15.]      At the time Sierra Club filed its petition, SDCL 11-2-61 provided that

"[a]ny person or persons, jointly or severally, or any taxpayer, or any officer,

department, board, or bureau of the county, aggrieved by any decision of the board

of adjustment may present to a court of record a petition duly verified, setting forth

that the decision is illegal, in whole or in part, specifying the grounds of the

illegality."[2]  Although "person" is not defined in SDCL chapter 11-2, the term is

defined in Title 11 to include any association.  *See* SDCL 11-7-1(11); SDCL 11-8-

1(12).  Because no contrary intention is apparent under SDCL chapter 11-2, Sierra

---

1.      The Legislature amended SDCL 11-2-61.1 in 2020, striking "relating to the grant or denial" and adding "granting or denying."

2.      The Legislature amended SDCL 11-2-61 in 2020, striking "or any taxpayer" and adding language not relevant to this appeal.

Club qualifies as a "person or persons" as the terms are used in SDCL 11-2-61. *See* SDCL 2-14-4 (providing that "[w]henever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears").

[¶16.]     Although Sierra Club qualifies as a person or persons, to have standing, it must also establish that it was aggrieved by the Board's decision.[3] As we explained in *Cable v. Union County Board of County Commissioners*, to be aggrieved, the person must show an injury in fact, namely "that the person suffered 'a personal and pecuniary loss not suffered by taxpayers in general, falling upon [the person] in [the person's] individual capacity,'" rather than one shared more generally by the body politic. 2009 S.D. 59, ¶ 26, 769 N.W.2d 817, 827 (citation omitted). Sierra Club contends that the alleged due process violations alone establish standing under SDCL 11-2-61.[4] On the contrary, SDCL 11-2-61

---

3.     In *Powers v. Turner County Board of Adjustment*, 2020 S.D. 60, 951 N.W.2d 284, the Court addressed multiple arguments now raised by Sierra Club in this appeal (the same counsel represents both Sierra Club and Powers). For example, *Powers* addressed the argument that *Cable v. Union County Board of County Commissioners*, 2009 S.D. 59, 769 N.W.2d 817, is distinguishable because the Court in *Cable* interpreted a different statute than the one at issue here. The *Powers* Court concluded that although the statutes (SDCL 7-8-27 and SDCL 11-2-61) are not identical, *Cable's* explanation of what is meant by "person aggrieved" applies to SDCL 11-2-61. 2020 S.D. 60, ¶ 18, 951 N.W.2d at 292. *Powers* also rejected the claim that our more recent decision in *Abata v. Pennington County Board of Commissioners*, 2019 S.D. 39, 931 N.W.2d 714, rather than *Cable,* controls the standing inquiry; noting that such argument fails because *Abata* did not address a statute with the phrase "person aggrieved." *Id.* ¶ 10, 951 N.W.2d at 292.

4.     Sierra Club argues that under *Armstrong v. Turner County Board of Adjustment*, 2009 S.D. 81, 772 N.W.2d 643, its due process claim alone gives it standing, but *Powers* specifically rejected that argument based on the fact

(continued . . .)

specifically requires that Sierra Club establish aggrieved status, and here, Sierra Club has not claimed that it suffered a personal or pecuniary loss as a result of the Board's decision to approve the Mocklers' permit, regardless of whether we accept that the wrong entity heard the initial appeal or that the proceeding below did not comport with due process.[5]

[¶17.] Sierra Club's argument that it was aggrieved by the Board's decision also fails. Sierra Club's petition alleges only a generalized harm to the air, water, and soil resources because of the proposed CAFO. This type of grievance is not personal to Sierra Club but, rather, is one experienced "in equal measure by all or a large class of citizens." *See Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975) (explaining what is necessary to assert an actual or threatened injury for Article III standing); *Sierra Club v. Morton*, 405 U.S. 727, 739,

---

(. . . continued)

SDCL 11-2-61 was amended after *Armstrong* to require aggrieved status in any appeal under the statute. *See Powers*, 2020 S.D. 60, ¶ 11 n.4, 951 N.W.2d at 288 n.4.

5. This is not to say that an alleged due process violation alone will always fail to establish standing under SDCL 11-2-61. As the United States Supreme Court has explained, a litigant can enforce procedural rights, "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing" rather than "from his interest in having the procedure observed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572, 573 n.8, 112 S. Ct. 2130, 2142, 2143 n.8, 119 L. Ed. 2d 351 (1992) (listing examples of "a procedural requirement the disregard of which could impair a separate concrete interest[,]" such as "the procedural requirement for a hearing prior to denial of [a] license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them"); *see also Summers v. Earth Island Institute*, 555 U.S. 488, 496, 129 S. Ct. 1142, 1151, 173 L. Ed. 2d 1 (2009) (providing that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing").

92 S. Ct. 1361, 1368, 31 L. Ed. 2d 636 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the [Administrative Procedure Act]."). The circuit court properly determined Sierra Club lacked standing to bring suit in its own right under SDCL 11-2-61.

### 3. Whether the circuit court erred in concluding that Sierra Club lacked representational standing.

[¶18.] In *Cable*, we recognized that the United States Supreme Court uses a three-part test to determine whether an association has standing to bring suit on behalf of its members. 2009 S.D. 59, ¶ 44, 769 N.W.2d at 831. Under that test, the prerequisites to representational standing have been met "when: (a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1997). Each prong of *Hunt* is addressed below.

#### a. Would Sierra Club's members have standing to sue in their own right?

[¶19.] The petition sets forth that Sierra Club's members "own land near the proposed" CAFO and that the Board's decision to approve the Mocklers' permit "creates a serious risk of pollution, diminished water quality, diminished air quality, increased odors, increased flies and pests, increased noise, increased glare,

negative economic impacts, decreased property values, incompatibility with surrounding area and properties, negative impacts on ecology and wildlife, and dilapidation and deteriorating of roads thereby increasing the tax burden on [the] members." Accepting these assertions as true, the circuit court concluded that Sierra Club's petition sufficiently set forth that its individual members are aggrieved by the Board's decision.

[¶20.]     The Mocklers contend that Sierra Club could not rely on general allegations in its petition to the circuit court to support standing because the issue of standing was first raised in the appeal from the *Planning Commission's* decision to the Board.[6]  In their view, because this is Sierra Club's *second* appeal and because it was aware that standing was a disputed issue, Sierra Club was required to substantiate its standing in its petition to the circuit court by affidavit or other evidence.  They direct this Court to *Sierra Club v. Environmental Protection Agency*, for the proposition that "[b]are allegations are insufficient . . . to establish a petitioner's standing to seek judicial review of administrative action" in a court of appeals.  *See* 292 F.3d 895, 898 (D.C. Cir. 2002).

[¶21.]     *Sierra Club* involved a petition seeking review of a rule passed by the Environmental Protection Agency (EPA).  In its brief to the court of appeals, the

---

6.     The Mocklers assert that the *local* Sierra Club chapter—Living River Group—actually appealed the permit decision to the Board.  They further claim that Living River Group did not set forth sufficient facts to support standing in the underlying appeal to the Board.  The Mocklers do not cite the record in support of either assertion, and a review of the existing record before the circuit court does not indicate whether Sierra Club or the local chapter appealed the permit decision or to what extent if any the standing issue was considered by the Board.

EPA challenged whether Sierra Club had Article III standing to appeal the EPA's rule. *Id.* In addressing Sierra Club's burden of production to show standing, the court recognized that the burden varies depending on the procedural stage of the litigation at issue. *Id.* at 898–99 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992)).

[¶22.]		The court noted that in cases seeking review of an agency order, the agency would ordinarily "have compiled an evidentiary record, and the petitioner ordinarily will have participated in the proceedings before the agency." *Id.* at 899. The court then determined that a petitioner seeking review of an agency determination is more "like a plaintiff moving the district court for summary judgment" because "the petitioner is asking the court of appeals for a final judgment on the merits, based upon the application of its legal theory to facts established by evidence in the record." *Id.* Therefore, the court held that a petitioner needed to either identify evidence from the record below to support standing or, if "standing was not an issue before the agency, submit additional evidence to the court of appeals."[7] *Id.*

---

7.	In *Cable*, we concluded that "Cable's submission of affidavits and testimony into the record, along with his failure to object when the county did the same[,] converted the county's motion to dismiss into a motion for summary judgment with its accompanying higher burden of persuasion." 2009 S.D. 59, ¶ 45, 769 N.W.2d at 831. In contrast, Travis's affidavit submitted to the circuit court merely stated that he had objected to Sierra Club's standing during the proceedings before the Board. It did not relate any factual information pertaining to Sierra Club's standing before the circuit court or any other information about what Sierra Club had presented to the Board below.

[¶23.] The court of appeals recognized that "[i]n many if not most cases the petitioner's standing to seek review of administrative action is self-evident; no evidence outside the administrative record is necessary for the court to be sure of it." *Id.* at 899–900. However, the court explained that in cases where a petitioner's standing is not self-evident from the administrative record, the petitioner "should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding." *Id.* at 900. The court noted that "[i]n some cases that [point] will be in response to a motion to dismiss for want of standing; in cases in which no such motion has been made, it will be with the petitioner's opening brief—and not, as in this case, in reply to the brief of the respondent agency."[8] *Id.*

[¶24.] We find the reasoning of *Sierra Club* persuasive. "Requiring the petitioner to establish its standing at the outset of its case is the most fair and orderly process by which to determine whether the petitioner has standing to invoke the jurisdiction of the court." *Id.* at 901. As the court explained, "[t]he facts upon which a petitioner relies for its standing to sue are necessarily peculiar to it and are ordinarily within its possession[.]" *Id.* Therefore, when a petitioner seeks review of

---

8. Ultimately, the court of appeals found Sierra Club failed to establish standing. The court determined that the review requested by Sierra Club was unlike "a case that has not yet progressed beyond the pleading stage in district court—at which stage the court 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 899 (quoting *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2137). The court then rejected Sierra Club's argument that its averments in its reply brief as to how its members are adversely affected by the rule were sufficient to establish standing. *Id.* at 901–02. It further deemed insufficient Sierra Club's post-argument affidavits, which like its brief, contained mere allegations. *Id.*

an inter-agency decision in circuit court and standing is challenged, the petitioner may not rely on bare allegations. Instead, the petitioner must either identify evidence from the record below to support standing, or if standing was not at issue in the inter-agency appeal, the petitioner must submit additional evidence to support standing to the circuit court.

[¶25.] Here, however, we are unable to assess whether standing was previously raised in such a manner as to place the onus on Sierra Club to prove standing to proceed in circuit court with something more than mere allegations in its petition.[9] Sierra Club has only filed its initial pleading (a petition for a writ of certiorari), and the Mocklers and the Board elected, in response to Sierra Club's petition, to file a motion to dismiss on the face of the petition without an underlying record to review.[10] Under these circumstances, the circuit court did not err at this

---

9. Even if Sierra Club's standing to appeal under the Clay County Ordinances was at issue in the inter-agency appeal, that does not perforce mean that the standing inquiry under SDCL 11-2-61 before the circuit court would be identical. The Mocklers simply assume so because the appeal provision in the Clay County Ordinances uses the phrase "person aggrieved." Whether there is merit in this argument—that "person aggrieved" means the same thing in an inter-agency CAFO appeal as it does in an appeal to the circuit court under SDCL 11-2-61—is not decided in this case because we do not have an underlying record to review. For the same reason, we decline to address the Mocklers' claim that the *Board* lacked jurisdiction to consider the inter-agency appeal and their attendant request that the decision of the Board be declared a nullity (thereby negating the additional conditions the Board imposed on the Mocklers' permit). Notably, the Board expressly declined to join the Mocklers' argument on this point. More importantly, without a record to determine in what manner the standing issue was raised and responded to, we cannot assess whether and how the Board considered the issue.

10. While both this case and *Sierra Club* involve the review of an agency decision on appeal, there are differences in the way the two appeals were postured at

(continued . . .)

-14-

juncture in treating the Mocklers' motion to dismiss as a facial attack on Sierra Club's petition and by presuming that Sierra Club's general allegations embraced the specific facts necessary to support its claims.

[¶26.]     Nevertheless, the Mocklers also argue that the circuit court erred in concluding that Sierra Club's petition sufficiently set forth that its members would have standing to sue in circuit court under SDCL 11-2-61.  In their view, Sierra Club's general allegations in the petition do "not pass muster under South Dakota case law" because the assertions do not "provide sufficient reason as to why [the individual members] are aggrieved in ways that the general public is not."

[¶27.]     "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Cable*, 2009 S.D. 59, ¶ 22, 769 N.W.2d at 826 (quoting *Benson v. State*, 2006 S.D. 8, ¶ 29, 710 N.W.2d 131, 143 (Zinter, J., concurring)).  While some of the allegations in the petition identify threats that are more akin to injuries experienced by all inhabitants of Clay County, other alleged injuries, such as the allegations that Sierra Club members who own land near the proposed CAFO will experience a loss in property value, increased odors, and diminished air quality, sufficiently set forth injuries unique to its members.  *See Huber*, 2019 S.D. 64, ¶ 18, 936 N.W.2d at 571 (finding sufficient, at the pleading stage, general allegations in petition that construction of the operation "will result

---

(. . . continued)

the time standing was challenged.  In *Sierra Club*, the EPA had raised the issue of standing in its brief *on the merits* of Sierra Club's petition.  292 F.3d at 901.  The court then gave Sierra Club an opportunity to submit additional evidence to substantiate standing.  *Id.*

in unmanageable manure and odor control on" petitioners' property).  Therefore, the circuit court properly determined that the first inquiry under *Hunt* was satisfied.

> **b.** *Are the interests Sierra Club seeks to protect germane to the association's purpose?*

[¶28.]	The circuit court did not address this prerequisite, and the Mocklers did not argue against a finding in favor of Sierra Club on this inquiry.  From our review, Sierra Club has satisfied this prong because its attempt to protect its members' air, water, and soil resources through litigation is germane to its organizational purposes.  The germaneness standard has been described as undemanding and as a "modest but sensible standard." *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 59 (D.C. Cir. 1988); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010); *Nat'l Lime Ass'n v. E.P.A.*, 233 F.3d 625, 636–67 (D.C. Cir. 2000); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 607 (7th Cir. 1993).

> **c.** *Do either the claims asserted or relief requested require participation of the individual members in the lawsuit?*

[¶29.]	Sierra Club claims that the circuit court incorrectly focused on whether the individual members would be required to provide *evidence* rather than on whether the members are *indispensable parties* to the litigation given the nature of the claims and relief requested.  According to Sierra Club, "[t]here is a difference between a person (1) needing to participate in a lawsuit as a named party, and (2) providing evidence via testimony or sworn affidavit."  Sierra Club further claims that it satisfied this inquiry under *Hunt* because both the nature of the claims and the relief requested are of the type properly resolved in a group setting.

[¶30.] The Court, in *Hunt,* relied on *Warth* when explaining the circumstances under which it would be appropriate for an association to institute a suit on behalf of its members when one or any number of them have standing to sue in their own right. 432 U.S. at 342–43, 97 S. Ct. at 2441. In the Court's view, an association may invoke the court's jurisdiction "so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause[.]" *Id.* (quoting *Warth*, 422 U.S. at 511, 95 S. Ct. at 2212). The *Hunt* Court noted that *Warth* "elaborate[d] on the type of relief that an association could properly pursue on behalf of its members[,]" namely that it "depends in substantial measure on the nature of the relief sought." *Id.* at 343 (quoting *Warth*, 422 U.S. at 515, 95 S. Ct. at 2213). "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* (citation omitted). In contrast, when the association alleges no monetary injury to itself but seeks damages for alleged injuries to its members, it is unlikely the damage claims are common to the entire membership or shared in equal degree by all. *See Warth*, 422 U.S. at 515, 95 S. Ct. at 2214. In that context, no award can be made to the association and each individual member claiming injury and damages must be made a party to the suit. *Id.*

[¶31.] The circuit court appears to have based its decision that Sierra Club lacked *standing* on a need for individualized proof from the members of their alleged potential injuries. However, the correct focus for this representational

standing inquiry is whether the members must participate as parties in order for Sierra Club to establish the claims raised and obtain the *relief* sought. Here, Sierra Club does not seek monetary relief on behalf of its members for injuries sustained, and the claims asserted focus on the manner in which the Board exercised its authority. The relief Sierra Club requests (reversal of the permit or a remand to further investigate) would simply "inure to the benefit" of the members. Therefore, although Sierra Club's members might need to provide affidavits or testimony to establish standing as the proceedings before the circuit court progress, their participation as parties to the suit is not required. *See id.*

[¶32.] As one court explained, the third prong under *Hunt* does not foreclose representational standing whenever participation of any individual members is necessary. *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991). Instead, the inquiry is whether participation of each individual member is *indispensable* in litigating the cause of action. *Id.*; *accord Retired Chicago Police Ass'n*, 7 F.3d at 601 (adopting the reasoning in *Hosp. Council*). Because the individual members are not indispensable parties given the nature of Sierra Club's claims and the relief it seeks, the circuit court erred in holding that Sierra Club lacked representational standing.

[¶33.] Affirmed in part, reversed in part, and remanded.

[¶34.] JENSEN, Chief Justice, and KERN and SALTER, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶35.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.